In re REVERE COPPER AND BRASS INCORPORATED, Bedford Assets Corporation, f/k/a John I. Paulding, Inc., Revere Copper Products, Inc., Revere Foil Containers, Inc., Revere Research, Inc., Revere Solar and Architectural Products, Inc., Revere Technology and Consulting Company, Inc., Revere Ware Courtesy Stores, Inc., Wells Aluminum Corporation, Wells Aluminum, Inc., Wells Aluminum Southeast, Inc., Wells Aluminum Moultrie, Inc., North American Aluminum Corporation, Revere Aluminum Building Products, Inc., and Wells Carmel Aluminum, Inc., Debtors.

James J. LAWRENCE, Muriel Lawrence and Inger Lawrence, Appellants,

v.

REVERE COPPER AND BRASS INCORPORATED, et al., Appellees.

No. 85 CIV. 7016 (PKL).

United States District Court, S.D. New York.

Sept. 1, 1987.

See also, Bkrtcy., 60 B.R. 887.

Nachman, Munitz & Sweig, Ltd., Chicago, Ill. (Gerald F. Munitz, of counsel), Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Joseph Samet, of counsel), for appellants.

Weil, Gotshal & Manges, New York City, (Harvey R. Miller, Stephen Karotkin, Edward A.C. Sutherland, of counsel), for appellees.

## OPINION & ORDER

LEISURE, District Judge:

James J. Lawrence, Muriel Lawrence and Inger Lawrence (collectively, the "Lawrences"), as holders of $40,000 in principal amount of tax-exempt Industrial Development Revenue Bonds due 1990 (the "Reduction Plant Bonds") issued by the Industrial Development Board of the City of Scottsboro, Alabama, to finance the construction of an aluminum reduction plant that had been leased by Revere Copper and Brass Incorporated ("Revere"), appeal from the Order of the Bankruptcy Court (the "Confirmation Order") confirming the Amended Joint Plan of Reorganization proposed by Revere and its co-debtor subsidiaries (the "Debtors"). The Confirmation Order was signed by the Bankruptcy Court, the Honorable Prudence B. Abram, on July 29, 1985.

## BACKGROUND

### A. *The Bonds*

In 1967, the Industrial Development Board for the City of Scottsboro, Alabama, issued in bearer form the tax-exempt Reduction Plan Bonds. The bonds were issued to finance the construction and purchase of an aluminum reduction plant, appurtenant facilities and related machinery formerly operated by Revere, and located near Scottsboro, Alabama (the "Reduction Plant"). The Reduction Plant Bonds were issued under and secured by a Mortgage and Indenture of Trust, dated as of Decem-

ber 1, 1967, as amended (the "Reduction Plant Indenture"). Disclosure S. at 7.[1]

On October 27, 1982, Revere and the Debtors, with the exception of Revere Aluminum Building Products, Inc. ("RABP") and Wells Carmel Aluminum, Inc. ("Wells Carmel"), each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). RABP and Wells Carmel filed their Chapter 11 petitions on May 31, 1983 and November 28, 1983, respectively. Disclosure S. at 8.

As of the date of the filing of Revere's Chapter 11 petition, the outstanding principal amount of the Reduction Plant Bonds was $55,110,000. Disclosure S. at 22.

B. *Debtors' Chapter 11 Plan of Reorganization*

On June 6, 1985, Revere and its affiliated Debtors filed the Plan with the Bankruptcy Court. Pursuant to an Order of the Bankruptcy Court dated June 6, 1985, a hearing on confirmation of the Plan was scheduled for July 29, 1985. Disclosure S. at 1.

The Plan concerned approximately $300,000,000 in total claims held by more than 10,000 creditors and shareholders. Disclosure S. at F-3, F-6. Pursuant to the Plan, claims of creditors were divided into classes. Disclosure S. at 21. Claims related to the Reduction Plan Bonds were encompassed in Class 2. Disclosure S. at 22-26; Plan at 10.

With respect to Class 2, and pursuant to the Plan, Revere distributed to the Indenture Trustee on the consummation date approximately $20,000,000 which, in substantial part, was distributed by the Indenture Trustee to holders of Reduction Plant Bonds in satisfaction of sinking fund obligations under the Reduction Plan Indenture. As is typically the case with distributions in connection with bearer bonds, the Indenture Trustee used such moneys to redeem Reduction Plant Bonds.

Pursuant to the Plan, rather than redeeming all of the Reduction Plant Bonds pro rata, only some of the Bonds were redeemed, but those were redeemed in full. As the Bankruptcy Court recognized when confirming the Plan, Tr. at 51, 136,[2] the Reduction Plant Bonds will not easily accomodate pro rata payments and attempting to do so will harm the Bonds' marketability. The Reduction Plant Bonds are in bearer form, are publicly traded and are, for the most part, unregistered. Accordingly, it would be difficult, if not impossible, to find all of the holders of the Bonds in order to make a pro rata payment and place a notation on each Bond to reflect such a payment. Moreover, unless the pro rata payment could be indicated on each and every Bond, there would be different types of Reduction Plant Bonds, allegedly representing the same obligations, adrift in the marketplace. Tr. at 29-31. Obviously, such conditions create confusion and would undermine, if not completely destroy, the market for the bonds.[3] Therefore, the Plan provides for some of the Bonds to be redeemed in full pursuant to by-lot procedures contained in the Plan.[4] In addition, the Court notes that pursuant to the Plan

---

1. "Disclosure S." refers to the Disclosure Statement filed with the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, 11 U.S.C. § 1125, dated June 6, 1985 and approved by order of the Bankruptcy Court, dated June 6, 1985.

2. "Tr." refers to the transcript of the hearing held before the Bankruptcy Court on confirmation of the Plan on July 29, 1985.

3. The Court also notes that the by-lot redemption provisions were adopted in an effort to preserve the tax exclusion for interest received on the Reduction Plant Bonds from gross income for federal income tax purposes, as indicated in the Disclosure Statement:

> There have been instances in which substantive changes in the terms of debt instruments have affected the excludability of interest for federal income tax purposes. Substantial efforts have been made to minimize any changes to the Reduction Plant Indenture ... in an attempt not to affect the tax-exempt status of interest on the Reduction Plant Bonds.

Disclosure S. at 59.

4. The by-lot redemption procedures were contained in the original Reduction Plant Indenture.

all holders of Reduction Plant Bonds will be paid, in full, their prepetition claims.

Each of the classes of creditors and shareholders accepted overwhelmingly the Plan. With respect to Class 2, 94.90% in number, and 95.94% in amount of those holders of Reduction Plant Bonds voting on the Plan, voted to accept the Plan. *See* Certification of Acceptances of Debtors' Amended Joint Plan of Reorganization, dated July 28, 1985.

### C. *Certification of the Plan*

On July 29, 1985, the Bankruptcy Court held a hearing on confirmation of the Plan. At the hearing, the Bankruptcy Court found that the Plan satisfied section 1129(a)(1) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(1), and that the Plan complied with section 1123(a)(4), 11 U.S.C. § 1123(a)(4), as providing for the same treatment of claims within classes and section 1122(a) of the Code, 11 U.S.C. § 1122(a), dealing with classification of claims and interests. The Bankruptcy Court also found that the Plan had been proposed in good faith in accordance with section 1129(a)(3) of the Code, 11 U.S.C. § 1129(a)(3). Tr. at 137–38; Confirmation Order at 3. Consequently, the Bankruptcy Court, at the conclusion of the hearing, overruled objections by the Lawrences and entered the Confirmation Order. Tr. at 137–38.

On July 31, 1985, the Lawrences filed a notice of appeal of the Confirmation Order. The Lawrences also applied to the Bankruptcy Court for a stay of the Confirmation Order pending their appeal. On August 1, 1985, the Bankruptcy Court denied the Lawrences' request for a stay on the grounds, *inter alia*, that the Lawrences were not likely to prevail on the merits of their appeal and the irreparable harm which would be suffered by others if a stay were granted. Tr. S. at 36–42.[5] The Lawrences failed to apply to this Court for a stay pending appeal of the Confirmation Order.

### D. *Consummation of the Plan*

In accordance with the terms of the Plan, the Debtors consummated the Plan on or about August 12, 1985. Consummation of the Plan involved, *inter alia*, the following distributions and transactions:

1. Revere paid millions of dollars of administrative expenses and priority claims in cash;

2. Revere distributed approximately $20,000,000 to the Reduction Plant Indenture Trustee for payment to holders of Reduction Plant Bonds. In connection with such distribution, $10,000 of the $40,000 in principal amount of Reduction Plant Bonds held by the Lawrences were selected for redemption but the Lawrences have refused to tender their bonds for payment;

3. with respect to a separate issue of tax-exempt industrial development bonds, Revere executed a supplemental bond agreement and a supplemental indenture of trust and paid approximately $2,000,000 to the indenture trustee to be applied in satisfaction of a portion of such bond issue;

4. Revere distributed approximately $32,000,000 in cash and 300,000 shares of freely marketable Revere common stock to holders of general unsecured claims;

5. Revere distributed approximately $35,000,000 in cash and promissory notes in the approximate aggregate principal amount of $28,000,000 to its bank creditors;

6. Revere distributed approximately $16,000,000 in cash, $20,000,000 in promissory notes and 500,000 freely marketable shares of Revere common stock to Tennessee Valley Authority and the Aluminum Company of America in satisfaction of their claims;

7. Revere issued pursuant to new indentures approximately $25,000,000 in aggregate amount of newly subordinated debentures and issued approximately 1,000,000 freely marketable shares of Revere common stock to the holders of Re-

---

5. "Tr. S." refers to the transcript of the hearing held before the Bankruptcy Court on the Lawrences' application for a stay pending their appeal on August 1, 1985.

vere's 55½% Convertible Subordinated Debentures;

8. Revere amended its Articles of Incorporation; and

9. Revere has made filings with the Securities and Exchange Commission reflecting Revere's changed financial condition and capital structure resulting from the confirmation and consummation of the Plan.

The Court also notes that since July 29, 1985, Revere's common stock has been traded continuously on The New York Stock Exchange and its other public debt securities continuously have been traded, based, in part, upon Revere's emergence from bankruptcy. Indeed, Revere and its subsidiaries have operated their business and vendors and suppliers have entered into transactions with Revere and its subsidiaries in reliance upon the confirmation and consummation of the Plan.

## DISCUSSION

The Lawrences argue that the Bankruptcy Court committed plain errors of law which mandate that the Confirmation Order be reversed. Specifically, the Lawrences argue that the Confirmation Order must be reversed because it sanctioned violations of section 1123(a)(4) of the Bankruptcy Code, 11 U.S.C. § 1123(a)(4), by permitting allegedly discriminatory treatment among holders of Reduction Plant Bonds. In addition, the Lawrences contend that the Confirmation Order sanctioned violations of section 1122(a) of the Bankruptcy Code, 11 U.S.C. § 1122(a), which establishes the parameters of the classification of claims and interests under a reorganization plan. Lastly, the Lawrences argue that the Confirmation Order sanctioned violations of section 1129(a)(3) of the Bankruptcy Code, 11 U.S.C. 1129(a)(3), in that the Plan was allegedly not proposed in good faith because the Lawrences' individual interests purportedly were not represented.

In response, Revere contends first that the instant appeal is moot in light of the substantial consummation of the Plan, the business activities of Revere since July 29, 1985, and the failure of the Lawrences to obtain a stay of the Confirmation Order pending appeal. Second, Revere contends that the Bankruptcy Court did not commit plain errors of law in determining that the Plan complied with the confirmation standards set forth in section 1129(a) of the Bankruptcy Code, and in particular, subsections (a)(1) and (a)(3) thereof.

In reply, the Lawrences—presumably recognizing the force of Revere's "substantial consummation" argument—concede that, even if the Court should find that the Plan fails because it does not comply with the aforementioned provisions of the Bankruptcy Code, vacatur of the Confirmation Order would be "draconian and entirely unnecessary." Lawrences' Reply at 20. Instead, the Lawrences suggest that this Court grant relief limited to a readjustment of Class 2 rights, and thus avoid the problem of mootness. In particular, the Lawrences request that the Court enter an order:

1. Directing all subsequent distributions to Class 2 creditors under the Plan to be made pro-rata;

2. directing Revere to recover the payments made pursuant to the lottery and hold the same in a separate interest-bearing account for redistribution on a pro-rata basis;

3. barring Revere from purchasing Reduction Plant Bonds unless approved by prior order of this Court; and

4. retaining by this Court of such jurisdiction as is necessary to carry out its specific orders and grant appropriate relief.

*See* Lawrences' Reply at 20–21.

After considering all of the aforementioned arguments, and for the reasons set forth below, this Court finds that the appeal is moot because the Plan has been substantially consummated. The appeal is, therefore, dismissed.

### A. *The Appeal is Moot and is Dismissed*

It is well settled that when a stay of an order confirming a reorganization plan pending appeal has not been obtained and the plan has been consummated, the appeal may be dismissed as moot. *See, e.g., In re*

*AOV Industries, Inc.,* 792 F.2d 1140, 1146–50 (D.C.Cir.1986); *In re Information Dialogues, Inc.,* 662 F.2d 475, 477 (8th Cir. 1981); *In re Roberts Farms, Inc.,* 652 F.2d 793, 797–98 (9th Cir.1981). The source of this principle is Article III of the Constitution which states that federal courts only decide "actual controversies." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Mills v. Green,* 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895).

The policy reasons underlying the mootness doctrine is simply that where "substantial elements of the reorganization plan" have been implemented in the absence of a stay, any appeal of the confirmation order is moot because "it is very doubtful that effective relief could be afforded...." *In re Information Dialogues, supra,* 662 F.2d at 477; *see American Grain Ass'n v. Lee-Vac, Ltd.,* 630 F.2d 245, 247 (5th Cir.1980) ("[I]n the absence of a stay [of a bankruptcy court order], action of a character which cannot be reversed by the court of appeals may be taken in reliance upon the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by appellant ... [and] the appeal will be dismissed as moot."). Moreover, such a doctrine advances the policy of affording finality to the orders and judgments of the bankruptcy court. *See In re Information Dialogues, supra,* 662 F.2d at 477; *American Grain Association, supra,* 630 F.2d at 248.

In *In re Information Dialogues* a creditor appealed an order confirming a reorganization plan without first obtaining a stay of that confirmation order. 662 F.2d at 476. After the entry of the confirmation order by the bankruptcy court, the debtor consummated the plan by taking, *inter alia,* the following actions:

1. Paying in full all priority wage claims;

2. paying allowed unsecured claims;

3. issuing shares of its common stock to creditors in satisfaction of claims; and

4. filing Forms 10–K and 10–Q with the Securities and Exchange Commission reflecting the changes in its financial and equity positions resulting from consummation of the plan.

*Id.*

The Court of Appeals for the Eighth Circuit found that the appeal was moot because the appellant had not obtained a stay of the confirmation order. *Id.* at 477. In so holding, the Court expressly relied upon the policy reasons supporting the confirmation of reorganization plans in the absence of a stay, as follows:

The mootness concern arises when, as here, it may be impossible for a court to grant effective relief because the disputed assets have been transferred pursuant to the reorganization plan. Bankruptcy Rule 805[6] addresses this concern with a procedure for creditors to request a stay pending appeal from the bankruptcy court's order. Rule 805 also provides that, absent a stay, court-approved transfers are final in that transferees are protected against subsequent reversal. In this situation the mootness doctrine promotes an important policy of bankruptcy law—that court-approved reorganizations be able to go forward in reliance on such approval unless a stay has been obtained.

*Id.* at 476–77 (citation omitted).

In the case at bar, the Lawrences were aware that the Plan would be consummated. The Lawrences, however, still failed to even attempt to obtain a stay from this Court. Moreover, the Court notes that the actions which have taken place in furtherance of the Plan are at least as substantial and far reaching than those held to be dispositive by the Eighth Circuit in *In re Information Dialogues.*

Under similar conditions, the Court of Appeals for the Ninth Circuit, in *In re Roberts Farm, supra,* 652 F.2d at 797–98, also held that an appeal from a confirma-

---

6. Bankruptcy Rule 805 is the former Bankruptcy Rule. Current Bankruptcy Rule 8005 is sub-

stantially the same.

tion order was moot. In that case the appellants appealed an order confirming a Chapter XI plan.[7] However, they failed to obtain a stay of the order pending appeal. At the time the appeal was heard, the plan had been substantially consummated. In particular, administrative claims had been paid, certain property transfers had been effected, unsecured creditors had received certain distributions and certain major claims had been resolved.

In dismissing that appeal on the basis of mootness, the Court recognized expressly the desirability of obtaining a stay, stating:

> In the field of the administration of estates under the bankruptcy laws, the policy of the law strongly supports a requirement that a stay be obtained if review on appeal is not to be foreclosed because of mootness.

*Id.* at 796. Moreover, the Court noted that, as in the case at bar, reversal of the confirmation order would create an intolerable situation:

> Are we not quite patently faced with a situation where the plan of arrangement has been so far implemented that it is impossible to fashion effective relief for all concerned? Certainly, reversal of the order confirming the plan of arrangment, which would knock the props out from under the authorization for every transaction that has taken place, would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court.

*Id.* at 797. Such an "unmanageable" and "uncontrollable situation for the Bankruptcy Court" would emerge here if the Lawrences' request for relief is granted.

Finally, in *In re AOV Industries*—a case relied upon by the Lawrences and Revere— the Court of Appeals for the District of Columbia Circuit stated that when a Chapter 11 reorganization plan has been substantially consummated and numerous transactions have been effected, such as the distribution of the cash and securities contemplated by the plan, the "practicalities of bankruptcy proceedings" require

the rule that "these transactions are immunized from reversal...." 792 F.2d at 1147. The *AOV* Court also noted that under such circumstances, the failure to obtain a stay pending appeal may be dispositive, as follows:

> We agree with the district judge that, to the extent reversal of the confirmation order would require the invalidation of good faith transfers, appellants' unsuccessful effort to obtain a stay was fatal.

*Id.*

Despite the above-quoted passages, the *AOV* Court permitted the prosecution of an appeal with respect to the lower courts' decisions. The appeal, however, was extremely circumscribed in scope. Accordingly, the holding in *AOV* is merely that an appeal will not be dismissed as moot, in the absence of a stay, only where there will be no harmful or prejudicial effect on creditors not party to the appeal and where there will be no impact on the activities of the debtor in its reorganized form. Revere argues, and this Court finds, that the Lawrences' appeal and their "Suggested Remedies" will cause the exact harmful consequences feared by the *AOV* Court.

As Revere points out:

> [The Lawrences], who hold less than .01% of the claims in their class, are requesting that this Court completely modify the treatment provided for holders of Reduction Plan Bonds under the Plan, a treatment which was accepted by 95% of the bondholders who voted on the Plan. The modifications proposed by [the Lawrences] effectively would destroy the public marketability of the Reduction Plant Bonds and probably result in the loss of [the Bonds'] tax-exempt status, two essential features of the investment decision by the bondholders.

Letter from Stephen Karotkin, Esq., to the Court, dated July 30, 1986, at 2. Ct. Ex. A. Specifically, as was stated at the hearing before the Bankruptcy Court:

> [A]ny type of pro rata distribution would be very detrimental to the marketability

---

7. Although *In re Roberts Farm* is a case decided under Chapter XI of the Bankruptcy Act of 1898, the same principles are applicable under the current Bankruptcy Code.

of these bonds, would reduce on a best-case basis substantially the market price for these bonds; on a worst-case basis might dry up in large part the ability to market these [bonds] in an orderly fashion. Any time you have bonds which have anything out of the ordinary associated with them—and certainly having to surrender a bearer bond, to have it stamped is very much out of the ordinary —you would wind up with all sorts of mechanical processing problems which would make it very difficult to process these in the back offices, would result in a large number of failed trades, for example where you have trades over interest or pro rata payment dates, and there became confusion as to whether you were buying a bond with a stamp or without a stamp or where someone is supposed to deliver a bond, not stamped, and they deliver one stamped because they have got the pro rata distribution.

\*     \*     \*     \*     \*     \*

But there is a strong likelihood here that if any type of pro rata payment is resorted to, that the price would drop dramatically and indeed there be even no market at all for these bonds.

Tr. at 30–31. Accordingly, the Court finds that to the extent *AOV* states that there are certain limited exceptions to the mootness doctrine in the absence of a stay pending appeal, such exceptions are not applicable in the instant case.

Instead, the instant appeal shares many of the characteristics of *In re Information Dialogues* and *In re Roberts Farm*. In the case at bar, the Confirmation Order was signed on July 29, 1985. The Lawrences, despite knowing that the Plan would be consummated subsequent to the denial of the Bankruptcy Court for their request for a stay, did not even attempt to obtain from this Court a stay of the Confirmation Order. Moreover, as discussed earlier, the following transactions, among others, have already been effected pursuant to the Plan:

1. Millions of dollars of administrative expenses and priority claims have been paid in cash;

2. thousands of general unsecured creditors have received distributions in the approximate aggregate amount of $48,-000,000;

3. a supplemental lease and indenture have been executed in connection with the Reduction Plan Bonds and the Indenture Trustee received a distribution of approximately $20,000,000 for distribution to holders of the bonds;

4. bank creditors have received approximately $35,000,000 in cash as well as new promissory notes;

5. public debentureholders have received two new issues of debentures in the aggregate amount of approximately $25,000,000 and preexisting publicly traded debentures have been cancelled; and

6. 1,800,000 shares of freely marketable common stock of Revere have been issued to creditors and debentureholders.

Moreover, Revere has made filings with the Securities and Exchange Commission reflecting Revere's new capital structure and financial condition. Revere and its subsidiaries have also entered into many contracts and transactions with third parties in reliance on the confirmed plan.

Apart from the fact that the appeal should be dismissed as moot as a matter of law, Revere argues that "it would be inequitable to allow the appeal to be prosecuted in light of [the Lawrences'] failure to attempt to obtain a stay from this Court." Appellees Brief at 18. Revere points out that it is " 'obligatory' upon an appellant from a confirmation order to 'pursue with diligence all available remedies to obtain a stay' of the implementation of that order prior to the occurrence of comprehensive changes made in reliance on the unstayed order." *Id.* (quoting *In re Roberts Farms, supra,* 652 F.2d at 798.) In the instant appeal, where the Lawrences "have failed and neglected diligently to pursue the available remedies to obtain a stay" of the Confirmation Order and thereby "have permitted such a comprehensive change of circumstances to occur," it is inequitable to hear the merits of their case. *In re Roberts Farms, supra,* 652 F.2d at 798; *see also In re Information Dialogues, supra,*

662 F.2d at 477; *Valley Nat. Bank of Ariz. v. Trustee for Westgate-California Corp.*, 609 F.2d 1274, 1283 (9th Cir.1979), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980) (inequitable to hear appeal seeking to undo transaction consummated pursuant to confirmed plan where appellants failed to seek stay); *In re New Haven Radio, Inc.*, 23 B.R. 762, 766 (S.D. N.Y.1982) (" '[T]he failure to seek stays coupled with a substantial change of circumstances would justify dismissal of the appeal for lack of equity.' ") (quoting *In re Roberts Farms, supra,* 652 F.2d at 798).

### CONCLUSION

For the aforementioned reasons, the Court finds that the instant appeal is moot. Accordingly, the appeal is dismissed.

SO ORDERED