In re The **EASTERN COMPANY,**
Debtor.

The **EASTERN COMPANY,** Appellant,

v.

**WHIRLPOOL CORPORATION,** The
Boston Phoenix, Inc. and Leggett
& Platt, Inc., Appellees,

and

**Richard R. Erricola, Chapter 7 Trustee,**
**Intervenor/Appellee.**

Civ. A. No. 92–10391–S.

United States District Court,
D. Massachusetts.

Dec. 10, 1992.

James M. Liston, David C. Phalen, Stephen M. Richmond, Kaye, Fialkow, Richmond & Rothstein, Boston, MA, for appellant.

Denis M. King, James F. Wallack, Goulston & Storrs, Boston, MA, for appellees Leggett & Platt, Inc., Whirlpool Corp.

Steven Kornstein, Boston, MA, for appellee Boston Phoenix, Inc.

Duncan S. Payne, Alexander L. Cataldo, Cuddy, Lynch, Monzi & Bixby, One Financial Center, Boston, MA, for appellee Richard R. Erricola.

## MEMORANDUM AND ORDER ON APPELLANT'S MOTION FOR REHEARING ON MOTION TO DISMISS APPEAL AS MOOT

SKINNER, District Judge.

On January 8, 1992, the Eastern Company ("Eastco") appealed the bankruptcy court's order for relief placing Eastco into involuntary bankruptcy under 11 U.S.C. § 303(b)(1). By memorandum and order dated October 30, 1992, I allowed the appellees' joint motion to dismiss the appeal as moot on equitable grounds and affirmed the bankruptcy court's order for relief.

Eastco, by motion filed November 9, 1992, now seeks an expedited rehearing of the mootness issue. In support of rehearing or reconsideration, Eastco relies substantially on the same arguments that I previously considered and rejected. Eastco does, however, raise two points that merit further discussion.

## DISCUSSION

In allowing the appellees' joint motion to dismiss the appeal as moot, I was guided

by our circuit court's opinion in *In re Public Serv. Co.*, 963 F.2d 469 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). Eastco contends that this reliance was "faulty" because *Public Service* (1) involved a Chapter 11 reorganization plan that was substantially consummated and (2) the inequities giving rise to mootness in *Public Service* are not substantially identical to those relied on in my October 30, 1992 memorandum and order. Notwithstanding these distinctions, I find that the rationale underlying *Public Service* is equally applicable here.

█ Although the mootness doctrine is codified in only two sections of the bankruptcy code, 11 U.S.C. §§ 363(m) and 364(e) [1], the doctrine has broad application to bankruptcy appeals. *See Miami Ctr. Ltd. v. Bank of N.Y.*, 838 F.2d 1547, 1550 (11th Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988) (noting that the "mootness standard ... is widely accepted in case law...."); *In re Highway Truck Drivers & Helpers Local 107,* 888 F.2d 293, 298 (3d Cir.1989) (observing that, "in addition to those situations covered under 11 U.S.C. § 363(m) and 364(e), a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position"). Similarly, our circuit court has noted on several occasions that the policies underlying the mootness doctrine "pervade the Bankruptcy Code." *In re Public Serv. Co.*, 963 F.2d at 472 (quoting *In re Stadium Management,* 895 F.2d at 848 and cases cited therein).

Eastco correctly notes that, in the context of bankruptcy appeals, the mootness doctrine has been applied most frequently to Chapter 11 reorganization plans where the plan has been substantially consummated.[2] *See, e.g., In re Public Serv. Co.,* 963 F.2d 469; *In re Roberts Farms, Inc.,* 652 F.2d 793 (9th Cir.1981); *In re Texaco, Inc.,* 92 B.R. 38 (S.D.N.Y.1988). Courts have also dismissed bankruptcy appeals as moot in the context of Chapter 11 liquidations based on the extent of the estate's liquidation. *See, e.g., Miami Ctr. Ltd. v. Bank of N.Y.,* 838 F.2d 1547; *In re Gaston & Snow,* No. 91 Civ. 8456, (S.D.N.Y. Apr. 20, 1992). I find that the mootness issues involved in a Chapter 11 liquidation case are highly analogous to an estate's liquidation, such as here, under Chapter 7 of the Bankruptcy Code. Eastco offers no authority to the contrary.

█ Additionally, the policy underlying the application of the mootness doctrine to bankruptcy appeals in general applies equally in the Chapter 7 liquidation context. As noted in *Public Service,* the mootness doctrine recognizes the "important public policy favoring orderly organization and settlement of debtor estates by 'affording finality to the judgments of the bankruptcy court.'" *In re Public Serv. Co.,* 963 F.2d at 471–72 (quoting *In re Revere Copper & Brass, Inc.,* 78 B.R. 17, 23 (S.D.N.Y.1987)); *see also In re Information Dialogues, Inc.,* 662 F.2d 475, 477 (8th Cir.1981) ("the mootness doctrine promotes an important policy of bankruptcy law—that court-approved reorganizations be able to go forward in reliance on such approval unless a stay has been obtained").

Accordingly, I conclude that the mootness doctrine has wide application to bankruptcy appeals and applies to Eastco's pres-

---

**1.** Title 11 U.S.C. § 363(m) provides that "when an order confirming a sale to a good faith purchaser is entered and a stay on that sale is not obtained, the sale becomes final and cannot be reversed on appeal." *In re Stadium Management Corp.,* 895 F.2d 845, 847 (1st Cir.1990) (citations omitted). Similarly, 11 U.S.C. § 364(e) provides that a party failing to obtain a stay of a post-petition financing transaction order may not reverse the authorization for that order on appeal.

**2.** "Substantial consummation" is statutorily defined as the:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C.A. § 1101(2) (West 1979).

ent appeal from the bankruptcy court's order for relief.

Eastco next contends that the inequities identified in my earlier order are entirely different in nature and kind from the inequities giving rise to mootness in *Public Service*. Not surprisingly, the facts of the present case are not identical to those addressed in *Public Service*. *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1147–48 (D.C.Cir.1986) (noting that determinations of mootness issues "cannot be cabined by inflexible, formalistic rules, but instead require a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail"). The same equitable principles underlying dismissal in *Public Service*, however, apply with equal force here.

■ As the district court in *Texaco* noted, apart from constitutional or article III mootness,

> there exists what [have been] called a 'melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.' Under this 'cousin of the mootness doctrine,' equitable principles of jurisprudence may dictate that a case be dismissed as moot even though a court may properly exercise its Article III jurisdiction.

*In re Texaco, Inc.*, 92 B.R. at 45 (internal citations omitted). This equitable doctrine is not premised on constitutionally based jurisdictional considerations, but rather rests in the court's discretion "not to determine a case on the merits." *In re Public Serv. Co.*, 963 F.2d at 471 (citations omitted); *see also In re AOV Indus., Inc.*, 792 F.2d at 1147 ("[e]ven when the moving party is not entitled to dismissal on Article III grounds, common sense or equitable considerations may justify a decision not to decide a case on the merits"); *In re Crystal Oil Co.*, 854 F.2d 79, 81–82 (5th Cir. 1988) (in holding that it would be inequitable to reach the merits, the court observed, "[w]e doubt that effective relief is possible, and conclude that common sense and equitable considerations, dictate the dismissal of this appeal").

Here, the trustee's actions, Eastco's failure to seek a stay and the comprehensive change in circumstances that has occurred since the order for relief entered have rendered it inequitable and impractical for this court to reach the merits of Eastco's appeal. *See In re Public Serv. Co.*, 963 F.2d at 473 (noting that a "case is moot if the requested relief would be either inequitable or impracticable in light of the changed circumstances").

■ While Eastco correctly notes that the failure to seek a stay is not alone determinative of mootness, *see Id.* (citations omitted), it is an important factor to consider. *See In re Hamady Bros. Food Mkts.*, 110 B.R. 815, 817 (E.D.Mich.1990). The Ninth Circuit, for instance, has observed that:

> it is obligatory upon appellant in a situation like the one in which we are faced to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order (even to the extent of applying to the Circuit Justice for relief (Rule 51, Supreme Court Rules)) if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*In re Roberts Farms, Inc.*, 652 F.2d at 798. Eastco's belated attempt to facilitate its appeal by requesting an expedited briefing schedule does not alter this analysis.

> Cases have held that an appeal may be dismissed as moot where an appellant neglects diligently to pursue available remedies such as a stay, or where an appellant, through 'procedural ineptitude,' pursues legally ineffective courses of action, which result in a comprehensive change of circumstances of the parties involved in the case.

*In re Hamady Bros. Food Mkts.*, 110 B.R. at 818 (citations omitted); *see also In re Public Serv. Co.*, 963 F.2d at 472–73 n. 9.

In the absence of a stay, the record reveals the following changed circumstances: Even before the order for relief, Eastco was already at an advanced stage of self-liquidation. Affidavit of Richard R. Erricola in Support of the Motion of the Motion of [sic] to Dismiss Appeal as Moot ("Errico-

la Aff.") ¶ 3. There is no indication that Eastco would emerge as a viable concern if the order for relief were reversed. *Id.* Eastco's board of directors implicitly recognized this fact by unanimously voting, on May 30, 1991, to begin liquidating the company's assets. *Id.*

Since the December 31, 1991 order for relief entered, liquidation of the Eastco estate has progressed significantly. *Id.* at ¶ 3. The trustee has undertaken numerous efforts to liquidate the estate's assets and maximize return to creditors. Most of these events cannot be undone or reversed because of the mere passage of time. *Id.* Those transactions that could be reversed would result in "irreparable harm to the creditors of the Eastco estate." *Id.*

For instance, upon discovering that actuarial tables for Eastco's defined benefit pension plan had been improperly calculated, the trustee terminated the pension fund and recovered approximately $910,000 in overfunding. *Id.* at ¶ 21. Reversing the order for relief would directly impact the resulting excise tax on this recovery. *Id.* at ¶ 22. If it is determined that the pension plan terminated in the context of a bankruptcy case, the tax on the $910,000 reversion would be 20%, instead of 50%. *Id.* This alone would result in a savings to creditors of approximately $273,000. *Id.*

The trustee also commenced an adversary proceeding, No. 92–1239, under 11 U.S.C. § 542 against BayBank Middlesex, N.A., based on an improper deduction from Eastco's cash collateral account. *Id.* at ¶ 23. This effort, which is unique to bankruptcy, resulted in the recovery of $141,-814.81 for the estate. *Id.* at ¶¶ 23–23. The trustee has also negotiated the sale of Eastco's ownership interest in certain radio stations. *Id.* at ¶ 24. As a result, the estate will receive $350,000 in cash. *Id.* at ¶ 27. Additionally, the trustee has undertaken over 200 in-state and out-of-state collection matters. *Id.* at ¶ 29. Many of these matters have already been settled and the estate is expected to recover up to $1,000,000 as a result. *Id.* In fact, the trustee has successfully concluded one of the estate's largest collection actions, re-sulting in a $284,000 settlement. *Id.* Finally, the trustee has undertaken numerous other transactions, including the rejection of all burdensome leases under 11 U.S.C. § 365, liquidating personalty and engaging various professional services. *See Id.* at ¶¶ 31–39.

Eastco acknowledges that these changes have occurred. In fact, Eastco continues to assert that, if released from bankruptcy, it would not seek to reverse any of the trustee's actions. Instead, the crux of Eastco's appeal is twofold: First, Eastco seeks to avoid the stigma of bankruptcy. Motion for Rehearing on Motion to Dismiss Appeal as Moot ("Rehearing Mot.") at 6. Second, Eastco seeks to prevent Whirlpool from "realizing the windfall it is expected to obtain by orchestrating the timing of the involuntary petition." *Id.* at 6–7. This is an apparent reference to the possibility that, if the order for relief is upheld, Whirlpool and the other petitioning creditors may be entitled to recover legal fees related to filing the involuntary petition. *Id.* Thus, Eastco asserts that this court should reach the merits of its appeal because effective relief is still available.

■ As noted in my earlier order, however, the focus of the equitable mootness doctrine is not whether any relief can be afforded, but whether the requested relief would be either inequitable or impracticable in light of the changes that were permitted to occur in the absence of a stay. *See In re Public Serv. Co.,* 963 F.2d at 473. The record here fails to support Eastco's assertion that creditors and third parties would fare better outside the bankruptcy context.

I am particularly troubled by the adversary proceedings currently pending against Eastco's principals for recovery of some of the estate's most valuable assets. Adversary proceedings have been commenced against Alan Steinert, Eastco's president, and nine former management level employees under 11 U.S.C. §§ 542, 544 and 548. *See* Adversary Proceeding No. 92–1126. These adversary proceedings relate to Eastco's May 31, 1991 decision to forgive over $500,000 in promissory notes that

were pledged by Steinert and other Eastco employees for stock purchases. (Deposition of Herbert R. Bachelder at 77–78 and 83–84; Erricola Aff. ¶¶ 10–11.) In addition, Eastco allegedly transferred in excess of $100,000 cash to these employees to cover the anticipated income tax liability resulting from the cancellation of the employees' indebtedness. *Id.* If the trustee prevails, the estate could recover as much as $610,-477. (Erricola Aff. ¶ 13.)

■ Dismissing the involuntary petition would result in dismissal of these adversary proceedings. Equitable considerations and the interests of creditors favor definitive resolution of these allegations. In view of the clear conflict of interest, I find it highly suspect that Eastco's principals would aggressively pursue either resolution of these allegations or recovery of these substantial assets outside the bankruptcy context.[3]

Dismissal of the involuntary petition would also result in the loss of preference actions. Of particular importance is the likely loss associated with the Westco note. The record reveals that Eastco holds a $1,087,999.41 promissory note from Westco, an entity controlled by Steinert and his family. *Id.* at ¶ 14. The Westco note originally provided for the payment of interest and the amortization of principal. *Id.* Prior to filing the petition, the note was redrafted to provide that interest would accrue, but would not be payable until the 1996 maturity date. *Id.* The trustee's attempts to sell and market the note have been hindered by the note's restated terms. *Id.* To remedy this situation, the trustee intends to pursue actions to reverse the restatement. *Id.*

As with the allegedly fraudulent conveyances by Eastco's principals, I find that Eastco's requested relief would likely result in termination of any recovery efforts along this avenue. If the involuntary petition were dismissed, the creditors' best interests would, once again, directly conflict with the pecuniary interests of Eastco's principals.

Eastco's requested relief would also sacrifice the bankruptcy trustee's unique avoidance powers under 11 U.S.C. §§ 547 and 550. The trustee has utilized these powers by seeking recovery of a $250,000 preferential transfer to New Main National Bank, and by investigating numerous other payments made by Eastco shortly before the involuntary petition was filed. *Id.* at ¶¶ 17–19. Eastco acknowledges that an assignee in an assignment for the benefit of creditors would be powerless to recover any preferences. Response of the Eastern Company to Second Supplemental Memorandum in Support of Motion to Dismiss Appeal as Moot ("Eastco Resp.") at 13.

In sum, Eastco's requested relief would directly result in adverse tax consequences and great inefficiencies, including wasted or, at least, significantly disrupted efforts by the trustee and other professionals, all to the detriment of creditors and numerous third parties with whom the trustee has transacted business or settled disputes during the past eleven months. If Eastco were to prevail on the merits, the creditors would also be deprived of the trustee's unique powers to recover preferential transfers. This alone would result in a loss to creditors of at least $250,000.

Moreover, I cannot ignore the fact that Eastco's principals have allegedly engaged in fraudulent transfers involving a significant portion of the estate's assets. Even if Eastco vigorously pursued the adversary actions that have been commenced by the trustee, those suits would be significantly delayed by dismissal and subsequent refiling in the state court system.

On this record, I find that removing the trustee with no guarantee that anyone will be put in his place would be grossly inequitable and impractical. The scant, if any, relief that may be afforded Eastco by avoiding the stigma of bankruptcy does not

---

3. Eastco contends that the equitable mootness doctrine, as expressed in *Public Service,* is rooted only in those transactions that have been completed. (Rehearing Mot. at 3.) This restrictive reading is unpersuasive. The determination of whether granting the appellant's requested relief would be inequitable or impractical in light of changed circumstances is necessarily a prospective inquiry. *See In re Public Serv. Co.,* 963 F.2d at 473.

warrant the harm that would be imposed on its creditors. After all, Eastco has already been in bankruptcy for over a year.

This is not meant to disparage or diminish the proud commercial reputation once enjoyed by Eastco. As appellants have noted,

> Eastco conducted a distribution business in New England for nearly 60 years. As recently as 1990, Eastco was the largest major appliance distributor in New England and during the 1980's it was the largest distributor of consumer electronics products and second largest distributor of floor covering products.

(Eastco Resp. at 2.) This fact, however, does not persuade me that the equities favor "knock[ing] the props out from under the authorization for every transaction that has taken place," *In re Roberts Farms,* 652 F.2d at 797, since the order for relief entered.

Similarly, Eastco's stated interest in protecting the estate from the possibility of reimbursing Whirlpool and the other petitioning creditors for legal expenses also fails to justify the resulting harm to creditors and third parties if the order for relief were reversed. Eastco's assertion that Whirlpool will realize a "windfall" is inaccurate and unpersuasive.[4] In determining whether to award attorney fees, the bankruptcy court must weigh the reasonableness and efficacy of a fee award against the actual benefits conferred on the estate. 11 U.S.C. §§ 503(a) and (b)(3)(A). Moreover, it is difficult to see how Whirlpool's potential recovery of legal fees can be characterized as an unjust "windfall." As by far the largest creditor, the bulk of any fee award would necessarily come out of Whirlpool's share of the estate's assets.

CONCLUSION

As I stated in my earlier memorandum and order, to return Eastco to possession now would be inequitable, impractical and contrary to common sense in light of the considerable changes that have been permitted to occur in the absence of a stay and since the order for relief entered. While I recognize that dismissal on this basis may be potentially harsh, it is warranted to "prevent frustration of orderly administration of estates under various provisions of the Bankruptcy Act." *See In re Roberts Farms, Inc.,* 652 F.2d at 798.

Accordingly, Eastco's motion for an expedited rehearing is denied. My October 7, 1992 memorandum and order dismissing Eastco's appeal as moot and affirming the bankruptcy court's order for relief is confirmed.

---

**4.** I also note that Eastco raises this issue for the first time in its motion for rehearing. In addition, Eastco has neglected to support its factual assertions by affidavit or other documentary evidence as required by Local Rule 7.1(A)(1), which provides that, "[a]ffidavits or other documents setting forth or evidencing facts on which the motion is based *shall* be filed with the motion." Rule 7.1(A)(1) of the Local Rules for the District of Massachusetts (emphasis added).