ALLSTATE INSURANCE COMPANY,
Appellant,

v.

Christopher John HUGHES and Ian Douglas Barker Bond, as Joint Scheme Administrators of Kingscroft Insurance Company, Ltd., et al., Appellees.

No. 94 Civ. 675 (SS).

United States District Court,
S.D. New York.

Nov. 21, 1994.

Saiber Schlesinger Satz & Goldstein by David J. D'Aloia, Newark, NJ, for appellant.

Shearman & Sterling by Ronald DeKoven, Jonathan L. Greenblatt, New York City, for appellees.

### OPINION AND ORDER

SOTOMAYOR, District Judge.

Pursuant to 11 U.S.C. § 304 of the United States Bankruptcy Code, the United States Bankruptcy Court entered a permanent injunction enforcing certain provisions of a foreign Scheme of Arrangement for the winding up of five foreign insolvent companies known collectively as the KWELM companies. Appellant Allstate Insurance Company ("Allstate"), a creditor, appeals the permanent injunction, alleging that it alters Allstate's contractual rights of arbitration with the KWELM companies in violation of both the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.

§§ 201—208, and the Federal Arbitration Act, 9 U.S.C. §§ 1—4. Appellees respond that the Bankruptcy Court properly exercised its discretion to stay arbitrations against the debtor until a creditor complies with certain procedural steps in the Scheme of Arrangement. In addition, Appellees claim that Allstate's failure to seek a stay of the Bankruptcy Court's injunction renders its appeal moot. For the reasons set forth below, I affirm the Bankruptcy Court's decision.

## BACKGROUND

The KWELM companies [1] are five affiliated companies that conducted insurance and reinsurance business in the United Kingdom through the London insurance market. From 1967 to 1986, Allstate and its then wholly owned subsidiary, Northbrook Excess and Surplus Insurance Company, entered into dozens of reinsurance contracts with the KWELM companies.[2] In the majority of these contracts, Allstate or its subsidiary was the reinsured; in approximately eight contracts, Allstate was the reinsurer. Each of the reinsurance contracts contained an arbitration clause requiring that all disputes be submitted to arbitration.

Between 1990 and 1992, each of the five KWELM companies ceased paying creditors' claims and filed winding-up petitions in the High Court of Justice in London (the "High Court") pursuant to the Insolvency Act 1986.[3] The High Court appointed Appellees Christopher John Hughes and Ian Douglas Barker Bond as the Joint Provisional Liquidators of each of the KWELM companies. The KWELM companies' insolvency was the largest insurance insolvency in the history of the London market, with estimated liabilities in excess of $5 billion.

Under English bankruptcy law, a winding-up petition commences a plenary proceeding which may result either in a statutorily prescribed liquidation under a winding-up order entered pursuant to the Insolvency Act 1986, or in a compromise or scheme of arrangement, a consensual agreement, between the debtor and its creditors for the distribution of the debtor's. A scheme of arrangement is subject to approval by the High Court, who must consider whether the scheme is in the interest of creditors.

The orders appointing the Joint Provisional Liquidators gave rise to an automatic stay under English law staying proceedings (including arbitrations) against and protecting the assets of KWELM throughout the United Kingdom. In 1992, in order to protect the KWELM companies and their assets from creditor actions in the United States, the Joint Provisional Liquidators filed ancillary cases under Section 304 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York, and sought and obtained a preliminary injunction. The preliminary injunction provided, *inter alia*, for a stay of litigation, including arbitration, against the KWELM companies in the United States.

During the pendency of the preliminary injunction, the Provisional Liquidators negotiated a Scheme of Arrangement with KWELM's creditors. In November 1993, KWELM's creditors voted to approve the Scheme. Allstate voted against the Scheme with respect to each of the KWELM companies.

Following the approval of the Scheme by the requisite number of KWELM's creditors, the High Court prepared an order sanctioning the Scheme. An order in identical terms was prepared by the Supreme Court in Bermuda (together, the "Sanctioning Orders"). Consistent with their representation to credi-

---

1. The KWELM companies are Kingscroft Insurance Co., Ltd.; Walbrook Insurance Co., Ltd.; El Paso Insurance Co., Ltd.; Lime Street Insurance Co., Ltd.; and Mutual Reinsurance Co., Ltd.

2. Under a reinsurance contract, an insurer, called the reinsurer, agrees to indemnify another insurer, called the reinsured, against all or part of a loss that may be incurred under insurance policies issued by the reinsured.

3. Mutual Reinsurance Company Ltd., which is incorporated in Bermuda and registered in England as an overseas company, also filed a winding-up petition in the Supreme Court of Bermuda. The proceedings in Bermuda mirrored the principal proceedings in the High Court.

tors in the Explanatory Statement accompanying the Scheme, the Provisional Liquidators informed the courts in England and Bermuda that they would not register, or docket, the Sanctioning Orders—and thus the Scheme would not become effective and the winding-up proceedings would not be dismissed—absent the issuance of a permanent injunction by the U.S. Bankruptcy Court staying all proceedings against KWELM pursuant to the terms set forth in the Scheme.

The Provisional Liquidators then applied to the U.S. Bankruptcy Court for permanent injunctive relief enforcing the Scheme in the United States. Allstate objected to the proposed permanent injunction and sought a modification of the Scheme's provisions regarding the stay of arbitrations against KWELM. Under the Scheme, creditors are enjoined from instituting litigations or arbitrations against the KWELM companies until after they comply with certain procedures designed to establish a claim. A creditor must submit complete details of a claim to the KWELM companies. If the claim is not recognized by the KWELM companies, creditors must first proceed in litigation or arbitration against the KWELM co-insurers,[4] and present to the KWELM companies the substantive judgment or final settlement obtained in the proceedings against the co-insurers. If within six months the KWELM companies do not recognize the claim on the basis of such judgment or settlement secured against the co-insurers, the creditor may institute proceedings, including arbitrations, against KWELM companies in any forum where the action might have been brought originally.

Allstate claimed in the U.S. Bankruptcy Court proceedings that the stay of arbitration under the Scheme imposed significant conditions on its ability to exercise its arbitration rights in contravention of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and the Federal Arbitration Act (the "FAA"). The Bankruptcy Court denied Allstate's re-

quest for a limited modification of the stay permitting it to proceed immediately to arbitration, and granted the permanent injunction staying arbitrations and litigations against the KWELM companies until creditors complied with the procedures set forth in the Scheme.

Allstate did not seek a stay of the permanent injunction pending appeal. Thus, following the entry of the injunction, the Sanctioning Orders were registered in England, the winding-up proceedings were dismissed, and the appointment of the Provisional Liquidators was terminated. Allstate appeals the ruling of the Bankruptcy Court and submits that it is entitled to a modification of the permanent injunction order to preserve its arbitration rights; KWELM argues that the Bankruptcy Court properly issued the permanent injunction, and that the actions taken pursuant to the unstayed order of the Bankruptcy Court render Allstate's appeal moot.

### DISCUSSION

### I. Mootness

Because Allstate failed to obtain a stay of the Bankruptcy Court's judgment, the Scheme was registered and the underlying insolvency proceedings pending in England and Bermuda were dismissed; thus, KWELM contends, no case or controversy exists any longer and this court cannot fashion effective relief. Alternatively, KWELM argues that even if possible, it would be inequitable for this court to fashion relief for Allstate, and therefore, the appeal should be dismissed as moot.

The Second Circuit has only recently addressed the issue of when a petitioner's failure to obtain a stay of a bankruptcy judgment renders an appeal moot, relying on a well-developed body of case law. The mootness doctrine arises from the constitutional limitation that Article III courts hear only live cases and controversies. *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed.

---

**4.** In the typical policy underwritten by the KWELM companies, one or more of the KWELM companies would accept only a percentage of the total risk under the policy; the remainder of the risk would be allocated to a number of co-insurers. The liability of each insurer on such policies is several, rather than joint, with each insurer liable only for its percentage share.

293 (1895). Thus, if a court cannot fashion effective relief, it must dismiss an action as moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400 (1990). In addition to its constitutional aspects, the mootness doctrine calls for the dismissal of an appeal, even though effective relief could be fashioned, when granting such relief would be inequitable. *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir.1993) (*Chateaugay I*) (citing *In re AOV Industries, Inc.*, 792 F.2d 1140, 1147 (D.C.Cir.1986); *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981)). When a party appeals from a judgment but seeks no stay, and implementation of the judgment results in "a comprehensive change of circumstances," equity also may call for a dismissal of the appeal as moot. *Id.* (quoting *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981)).

■■■ The mootness doctrine is especially relevant in bankruptcy proceedings, where public policy favors that, in the absence of a stay, court-approved reorganizations go forward. *In re Revere Copper and Brass Inc.*, 78 B.R. 17, 21 (S.D.N.Y.1987). Bankruptcy Rule 8005, which outlines the procedure for obtaining a stay pending appeal, does not mandate that a petitioner seek a stay pending an appeal; nevertheless, "[t]he party who appeals without seeking to avail himself of that protection does so at his [or her] own risk." *Chateaugay I, supra*, 988 F.2d at 326. *See also In re Texaco Inc.*, 92 B.R. 38, 45 (S.D.N.Y.1988), *In re Revere, supra*, 78 B.R. at 22.

Case law evidences that the constitutional and equitable considerations of the mootness doctrine are often intertwined. In *Chateaugay I*, for example, the petitioner appealed to the Second Circuit the dismissal of its complaint for lack of standing. Petitioner did not obtain a stay of the district court's order; as a result of the unstayed order, respondent paid all funds it was required to pay, and the funds were disbursed to the beneficiaries of the pension plan at issue. The Second Circuit did not reach the merits of the standing issue as it dismissed the appeal as moot. It reasoned that recoupment of the funds would be "impracticable" (constitutional concerns) as well as "unfair" (equitable concerns) to the pensioners. *Chateaugay I, supra*, 988 F.2d at 326. In fact, when analyzing whether an appeal of an unstayed bankruptcy judgment is moot, a court may not be able to clearly distinguish those factors that make it "impossible" to grant relief from those factors that would make it "inequitable" to grant relief. The Second Circuit noted that

> [t]hese [equitable considerations and constitutional requirements] often cannot be addressed separately; they "are interactive, as 'the finality rule limits the remedies a court can offer.'"

*In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir.1993) (*Chateaugay II*) (quoting *In re Public Service Co.*, 963 F.2d 469, 472 (1st Cir.1992)).

The finality rule referred to by the Circuit Court is Section 363(m) of the Bankruptcy Code, which provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal. 11 U.S.C. § 363(m). The legislature then, by prohibiting the courts from offering a remedy where there has been a good faith transfer of property, mandates that appeals involving such transfers be considered moot.

In appeals involving issues other than a transfer of property, however, the legislature has not outright prohibited the courts from providing appellants a remedy. Instead, courts weigh case-specific factors to determine whether parties have relied on an unstayed bankruptcy order to such an extent that it would be inequitable to hear an appeal of the order. *See In re Chateaugay Corp.*, 167 B.R. 776, 779 (S.D.N.Y.1994) (*Chateaugay III*).

■■ The Second Circuit has indicated that it is appropriate to scrutinize appeals for mootness in two situations: when an unstayed order has resulted in a "comprehensive change in circumstances," *Chateaugay I, supra*, 988 F.2d at 325, and when a reorganization is "substantially consummated," *Chateaugay II, supra*, 10 F.3d at 952.

■■ No specific test has been formulated under the "comprehensive change of circum-

stances" standard to demonstrate just how comprehensive such a change of circumstances must be to make it inequitable to hear an appeal. Instead, the analysis is done on a case-by-case basis. Courts have considered such factors as whether administrative expenses associated with the bankruptcy were paid and whether funds were distributed to creditors. *See, e.g., In re Revere Copper & Brass, Inc., supra,* 78 B.R. at 23.

 Compared with the flexible comprehensive change of circumstances standard, the "substantial consummation" standard is more rigorously defined. "Substantial consummation" is a term of art under Chapter 11 of the U.S. Bankruptcy Code.[5] There exists a strong presumption that an appeal of an unstayed order is moot once a reorganization has been substantially consummated. *In re Texaco, supra,* 92 B.R. at 46. The substantial consummation standard, however, is not applicable in this case because it specifically addresses reorganizations under U.S. bankruptcy law, while the KWELM companies' liquidations (as opposed to reorganizations) were implemented under English law. This case does not involve a U.S. Bankruptcy scheme and for this reason, I do not rely on the substantial consummation standard in reaching my decision in this case.

 ██ Nevertheless, I consider the equitable considerations enunciated by the Second Circuit under the substantial consummation standard to be instructive to the comprehensive change in circumstances standard. The five circumstances that must be present in order for substantial consummation not to moot an appeal are that:

> (a) the court can still order some effective relief, *Church of Scientology v. United States,* —— U.S. ——, 113 S.Ct. 447, 449 [121 L.Ed.2d 313 (1992) ]; (b) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity", *In re AOV Industries, Inc.,* 792 F.2d at

1149; (c) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court", *In re Roberts Farms, Inc.,* 652 F.2d 793, 797 (9th Cir.1981); (d) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings", *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 841 F.2d 92, 96 (4th Cir.1988) (citations omitted); and (e) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order ... if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from", *In re Roberts Farms, Inc.,* 652 F.2d at 798.

*Chateaugay II,* 10 F.3d at 952–53.

 Guided by the comprehensive change in circumstances standard and the factors considered in the substantial consummation standard, I turn to the instant challenges. I address first the arguments made by the parties in the context of these factors.

Allstate argues that because repayment of KWELM's creditors will take decades, the Scheme has not progressed to a point at which it would be inequitable for this court to hear an appeal. KWELM counters that the Scheme is substantially consummated: The Scheme of Arrangement was registered, the underlying insolvency cases were dismissed by the High Court and the Supreme Court of Bermuda, and the Joint Provisional Liquidators were dismissed.[6]

As to the threshold matter whether there has been a comprehensive change in circumstances under the Scheme, I find KWELM's arguments persuasive. KWELM's creditors, who collectively are owed $5 billion, voted to approve the Scheme and have regarded it as

---

5. "Substantial consummation" is defined in 11 U.S.C. § 1101(2) as: (A) transfer of all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of business or of the management of all or substantially all of the

property dealt with by the plan; and (C) commencement of distribution under the plan.

6. I note that the same are now the Joint Scheme Administrators, and are the appellees in this action.

the plan to negotiate their payments since the Scheme was registered months ago. The right of creditors, therefore, to proceed in a plenary winding-up proceeding has been affected by the registration of the Scheme. Whether of not payment of creditors will take decades, the rights of creditors have been affected. I now turn to whether the considerations enunciated by the Second Circuit in *Chateaugay II* suggest that I should nevertheless hear Allstate's appeal.

The first consideration asks whether this court can order effective relief. The answer is not clear to me, and was not adequately briefed by the parties. Allstate believes that it would be a small matter for this court to modify the permanent injunction issued by the Bankruptcy Court. Appellees argue that once a Scheme is registered, it "has effect analogous to statute in the United Kingdom and cannot be modified" (Appellees' Br. in Opp'n to Appeal at 12). I am not sure how a modification of the permanent injunction order would affect the actions taken by the High Court and the Supreme Court of Bermuda. I find myself in the position described by the Second Circuit in *Chateaugay II:* the constitutional question of whether I can offer relief interacts with the equitable question of whether I should offer relief. I note that even were I convinced that a modification of the permanent injunction could afford appellants relief, concerns of comity would make me reluctant to issue a modification that would call into question the validity of a Scheme that has statutory effect in the United Kingdom.

The second condition of the *Chateaugay II* test, that relief not affect the reemergence of the debtor, is not applicable here as the KWELM companies are not involved in reorganizations.

Under the third consideration, an appeal need not be rendered moot if the requested relief "will not unravel intricate transactions so as to 'knock the props out from under the authorization for every transaction that has taken place.'" If Allstate's right to immediate arbitration were reinstated, I do not know if the results would rise to the level of "unraveling" the Scheme. I point out, however, that a modification of the permanent injunction would have a greater impact on the Scheme than Allstate contends; Allstate would not be the only creditor affected as many other creditors have contractual arbitration provisions.

The fourth consideration requires that all parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings. I find, first, that KWELM's other creditors, who collectively are owed approximately $5 billion, would be adversely affected by a modification of the Scheme. The creditors approved the Scheme only on the condition that the U.S. Bankruptcy Court issue the permanent injunction. While I cannot know how important the stay provisions were to the creditors, the insistence on the permanent injunction is notable. In addition, I am convinced by appellees' argument that the purpose of the stay provisions is to avoid dissipation of KWELM's assets which would occur if KWELM were forced to litigate or arbitrate all its claims. Any dissipation of assets would necessarily harm KWELM's other creditors. Therefore, I find that KWELM's other creditors would be adversely affected by a modification of the permanent injunction, and that it would have been impracticable for all of them to have participated in these proceedings.

The fifth and final part of the *Chateaugay II* test requires that the appellant has diligently pursued a stay. Allstate failed to do this, even though it had been notified that the Scheme was to be registered the day following the issuance of the permanent injunction. In addition, I note that although Allstate points out that it appealed the Bankruptcy Court's order only nine days after its issuance, other courts have dismissed appeals with the same time delay. *See In re Texaco, supra,* 92 B.R. at 45.

I reiterate that the above five factors are not necessarily dispositive under the comprehensive change in circumstances standard. It is persuasive to me, however, that Allstate fails to meet even one of these factors, while the *Chateaugay II* court required that appellants in a substantial consummation action meet all five of the factors to save their appeal from being dismissed as moot. Con-

sequently, I find that it would be inequitable for me to hear this appeal; it is moot. Nevertheless, so that there is no doubt as to the finality of the Bankruptcy Court's Order, I reach the merits of Allstate's appeal.

## II. *Arbitration Rights*

 Allstate claims that the injunction issued by the Bankruptcy Court "impermissibly alters" Allstate's arbitration rights, and that the Scheme violates the Convention and the FAA. I find that Allstate's arbitration rights are not altered, and that the provisions of the Scheme do not violate the Convention or the FAA.

Allstate confuses the substantive right to arbitrate a disputed claim with the procedural requirements of proving the existence of a bankruptcy claim. The substantive right to arbitrate is the right to a forum to adjudicate a dispute; that is, any disputed claim will be decided by arbitrators rather than by a court of law. Allstate's substantive right to arbitrate is preserved by the Scheme; it has not been altered.

Admittedly, before Allstate can arbitrate a disputed claim, it must follow a procedure that was not required when the KWELM companies were solvent. This is not unique to the Scheme, however; all bankruptcy regimes establish procedures to prove a claim. To prove a claim under a bankruptcy administered in the United States, for example, a creditor must follow the procedures set forth in Bankruptcy Rules 3001 to 3005.

Allstate cannot credibly take issue with the first requirement of the Scheme, that a creditor submit details of its claims to KWELM, as U.S. Bankruptcy Rule 3001 contains a virtually identical requirement. The second requirement, that a creditor present a judgment obtained in a proceeding against a co-insurer of KWELM has no corresponding rule under U.S. law. Nevertheless, this provision does not violate Allstate's substantive right to arbitrate. It is merely an alternative way to prove a claim, not unlike U.S. Bankruptcy Rule 3001(d), which requires that for a claim in which a security interest in the property of a debtor is claimed, evidence that the security interest was perfected accompany the proof of the claim. In addition, this requirement of the Scheme has the additional advantage of serving an important bankruptcy goal: it saves KWELM unnecessary legal costs, which money can be applied to creditors' claims rather than to administrative costs. Under the Scheme, Allstate can arbitrate any claims not settled within six months of the submission of the required documents, and therefore, Allstate's substantive right to arbitrate is preserved.

 Allstate is mistaken to the extent that it claims that the Convention and the FAA afford parties to an arbitration agreement rights superior to parties to contracts without such a clause. The right to litigate is no less a substantial right than the contractual right to arbitrate, as the Second Circuit pointed out in *Cunard S.S. Co. v. Salen Reefer Services, AB*, 773 F.2d 452, 459 (2d Cir.1985) ("There is, however, no compelling policy reason for a general creditor whose claim is subject to arbitration to receive a preference over other creditors.") The purpose of the FAA was not to elevate arbitration rights over litigation rights, but rather to revers[e] centuries of judicial hostility to arbitration agreements, ... and to place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (citing H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924).

## CONCLUSION

The Bankruptcy Court properly exercised its discretion in issuing the Permanent Injunction Order dated December 14, 1993. I affirm the order of the Bankruptcy Court and direct the Clerk of the Court to enter judgment accordingly.

**SO ORDERED.**