**In re OCEAN BEACH PROPERTIES and Ocean Shore Investments, Debtors.**

**Bankruptcy Nos. 92–06689–R, 92–06691–R.**

United States Bankruptcy Court, E.D. Michigan.

Dec. 8, 1992.

Geoffrey L. Silverman, Southfield, MI, for Ocean Beach Properties.

Stuart Gold, Southfield, MI, for Ocean Shore Investments.

David Black, Southfield, MI, for creditor.

## SUPPLEMENTAL OPINION GRANTING MOTION TO LIFT STAY[1]

STEVEN W. RHODES, Bankruptcy Judge.

### I.

Ocean Beach Properties and Ocean Shore Investments (collectively the debtors or the partnerships) are two related general partnerships which own three undeveloped parcels on an island off the eastern coast of Florida. These entities are the debtors in this consolidated Chapter 11 proceeding. First National Bank and Trust Company of the Treasure Coast (the bank) is the primary secured creditor and holds a mortgage on the properties which are the sole assets of the debtors. The debt totals approximately $912,000. The debtors filed bankruptcy on the eve of foreclosure.

Following the filing of the bankruptcy case, the bank filed a motion to lift the stay for cause under § 362(d)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1989) (the Code). The bank contends principally that there is cause to lift the stay because the case was filed in bad faith. The parties do not dispute that bad faith might constitute grounds or cause to lift the automatic stay, but the debtors do deny that the case was filed in bad faith. Under § 362(g)(2) of the Code, the burden of proof is on the debtor.

### II.

The Sixth Circuit has discussed the concept of a good faith filing in Chapter 11 at some length. Specifically, the court has stated:

The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dalton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). "If there is not a potentially viable business in place worthy of protection and rehabilitation, a Chapter 11 effort has lost its *raison d'etre ....*" *In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr.W.D.Ky.1983). Although appellant contends there is no explicit "ongoing business" requirement to Chapter 11 reorganization, such a requirement is inherent in the statute and clearly implied in 11 U.S.C. § 1112(b). That section permits the court, after notice and hearing, to "convert a case under this chapter to a case under Chapter 7 ... or ... dismiss a case under this chapter, ... for cause, including— ... (2) inability to effectuate a plan...." To be confirmed, a plan must "provide adequate means for the plan's execution," 11 U.S.C. § 1123(a)(5), which necessarily requires some means by which the debtor may repay its debts. More generally, an implicit prerequisite to the right to file is "good faith" on the part of the debtor, the absence of which may constitute cause for dismissal under § 1112(b). *See Dalton Lodge*, 22 B.R. at 922. Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had an ongoing

1. This opinion supplements a decision given on the record in open court on October 9, 1992.

business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed. *Id.* at 923; *see In re Eden Associates,* 13 B.R. 578, 585 (Bankr.S.D.N.Y.1981) ("The debtor, with no assets, no bona fide creditors and no business, cannot effectively rehabilitate its enterprise...."); *see also In re Tinkoff,* 141 F.2d 731 (7th Cir.1944) (mortgage foreclosure proceedings in state court were valid and equity of redemption expired; debtor had no interest in property for which it sought to provide arrangement and dismissal of petition was proper).

*In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985).

The Court concludes that in the context of this case, it should evaluate the factors identified in the *Winshall Settlor's Trust* case. Thus, the Court will examine whether the debtors have assets, whether the debtors have an ongoing business to reorganize, and whether there is a reasonable probability that the debtors can propose a viable plan of reorganization.

### III.

With regard to the first issue of whether the debtors have any assets, the evidence establishes that two of the partners of each partnership hold title to the parcels as co-trustees. The deeds do not indicate the beneficiaries or the purposes of the trusts. The trust agreements indicate that the co-trustees hold the properties for the benefit of the partnerships. The deeds to these co-trustees were recorded, but neither the trust agreements nor any other documents, such as declarations of trust, have been recorded. The bank argues that under these circumstances, the real estate is not property of the bankruptcy estate under Florida law.

The debtors admit that they do not hold legal or record title to the properties at issue, but contend that they own the beneficial interests. The bank contends that the debtors do not hold any beneficial interest in the trusts because the co-trustees have fee simple title to the property under Florida law.

The relevant Florida statute provides in pertinent part:

(1) Every deed or conveyance of real estate ... in which the words "trustee" or "as trustee" are added to the name of the grantee, and in which no beneficiaries are named nor the nature and purposes of the trust, if any, are set forth, shall grant and is hereby declared to have granted a fee simple estate with full power and authority and to the grantee in such deed to sell, convey, and grant and encumber both the legal and beneficial interest in the real estate conveyed, unless a contrary intention shall appear in the deed or conveyance; provided that there shall not appear of record among the public records of the county in which the real property is situate at the time of recording of such deed or conveyance, a declaration of trust by the grantee so described declaring the purposes of such trust, if any, declaring that the real estate is held other than for the benefit of the grantee.

(3) Every mortgage of any interest in real estate or assignment thereof ... in which the words "trustee" or "as trustee" are added to the name of the mortgagee or assignee and in which no beneficiaries are named ... shall vest and is hereby declared to have vested full rights of ownership to such mortgage or assignment and the lien created thereby with full power in such mortgagee or assignee to assign, hypothecate, release, satisfy or foreclose such mortgage [unless the mortgage provides otherwise or a trust document is recorded].

Fla.Stat. ch. 689.07 (1991).

Under the plain language of the statute, the co-trustees hold the property in fee simple, and the co-trustees granted the bank a mortgage with full power to foreclose without having to deal with the alleged beneficial interest of the debtors. *See Grammer v. Roman,* 174 So.2d 443 (Fla.App.1965). Thus, the bank argues that the real property is not property of the estate and that the stay should be lifted to allow the bank to continue with the foreclosure.

The Florida cases that deal with this statute make it abundantly clear that its purpose is to allow real estate developers to deal in real property by conveyance or mortgage or otherwise in a convenient manner. *See, e.g., Arundel Debenture Corp. v. Le Blond*, 139 Fla. 668, 190 So. 765 (1939); *Meadows v. Citicorp Leasing, Inc.*, 511 So.2d 622 (Fla.App.1987). Without the aid of this statute, such transactions would be much more complex and difficult to effectuate. Indeed, the debtors set up these transactions specifically intending to take advantage of the aid that this statute affords. Yet, the Court concludes, the bank's interpretation would turn this statute, which was intended to be of mere administrative benefit to the debtors in matters of property transfer, into a sword against the debtors, and would have the Court hold as a result that the debtors thereby have no interest in the property.

The Court concludes that the law of Florida would not tolerate such an inequitable result. The bank granted the mortgage with the full knowledge of the true nature of the transaction and of the beneficiaries' identities. This property has been purchased, maintained and developed, to the extent it has, with the assets and resources of the debtors, and not with any independent assets of the trusts. The Court concludes that in these circumstances, the law of Florida would provide that under trust principles, especially principles of resulting trusts, that the debtors do hold the beneficial interest in this property. *See F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc.*, 553 So.2d 748, 749 (Fla.App.1989).

### IV.

The next issue is whether the debtors have an ongoing business to reorganize. The debtors contend that their business is the business of developing this real property. As noted by the bank, the difficulty with this contention is that no income has ever been received from this business, nor will any be received in the short term. In these circumstances, it is difficult to find that the debtors have a business to reorganize.

As noted in *Winshall Settlor's Trust*, the purpose of Chapter 11 is to reorganize a business. It is certainly true that reorganization might in appropriate cases consist of either *rehabilitation* of the debtor's business or the orderly *liquidation* of the debtor's assets. The law as it has developed under Chapter 11 permits either course of action or a combination of both courses of action. *See, e.g., Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1352 (5th Cir.1989); 1B *Bankruptcy Service, L.Ed.*, § 7:1 (1990).

Nevertheless, neither rehabilitation nor an orderly liquidation is involved in this case. This case involves two entities which resemble start-up operations with insufficient capital, which invoke Chapter 11 in an effort to get their business to the point where it will become operational with income to pay its debts. The Court concludes that such a use of Chapter 11 is questionable. The Court is not prepared to hold that such is always inappropriate, because the Court concludes that in certain circumstances, it may, nevertheless, be appropriate to allow such a business the benefit of Chapter 11. Therefore, this Court holds that the most persuasive evidence that an enterprise with no current income has an ongoing business for the purposes of Chapter 11, is evidence of a reasonable possibility of reorganization.

### V.

The final issue under *Winshall Settlor's Trust* is whether there is a reasonable probability that the debtors can reorganize. In interpreting a similar issue under § 362(d)(2)(B) [2], the Supreme Court has

---

2. 11 U.S.C. § 362(d)(2) provides:
    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
    ....
    (2) with respect to a stay of an act against property ..., if—

indicated that the requirement is not merely a showing that there is conceivably to be an effective reorganization and that the property will be needed for it, but that the property is essential for an effective reorganization that is in prospect. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). The Court went on to note that this means that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* at 376, 108 S.Ct. at 633.

In making this judgment, the Court must take into account the important consideration that it is not faced with the issue of the feasibility of any particular plan at this time. The case is not yet at the plan confirmation stage, and the issue simply is whether there is a reasonable possibility that the debtors can propose any confirmable plan.

After reviewing the evidence in this case, the Court concludes that the debtors have failed to establish any reasonable prospect of reorganization, essentially for the reasons suggested by the bank relating to the obstacles in regard to permits, financing and marketing.

The evidence establishes that the debtors have made very substantial progress in obtaining the permits necessary for the development of this project, and if this were the only obstacle to a successful business enterprise, the Court would likely deny the motion. Nevertheless, the Court must note that all of the necessary permits are not in place, and that substantial expenditures of time and resources, including financial resources, must be made in order to obtain the permits. Accordingly, this factor does have some substantial impact upon this Court's consideration.

With regard to financing, the evidence establishes that the debtors need up to approximately three million dollars for various hard and soft costs, in order to be in a position to bring its product (buildable lots) to market for sale. The Court concludes that the evidence fails to establish any firm plans for financing these costs upon which the Court and the debtors' creditors can reasonably rely. There have been suggestions in the evidence that the debtors may be able to obtain bank financing, or financing by current partners and investors, or new partners or investors. However, the credibility of these suggestions is very severely undermined by the debtors' past failures in financing, even among its own partners who presumably have a stake in the ultimate success of the operations. The Court concludes that the credibility of these suggestions is also undermined by the extremely conservative real estate financing market that presently exists.

Finally, with regard to marketing, the single fact that predominates the Court's consideration here is that the debtors have yet to sell any product, and accordingly the market for their product is unknown and speculative at best. The experts who appeared before the Court, Mr. Johnson for the bank and Mr. Brown and Mr. Berkey for the debtors, obviously disagree about the ultimate marketability of the debtors' product. Mr. Johnson cited several adverse factors, including the remote location of the properties and their distance from shopping and other facilities; their proximity to a nuclear power plant; and the depressed real estate market in general and specifically in Florida. On the other hand, the debtors' evidence establishes that there are several favorable considerations suggesting the ultimate marketability of this product, including the fact that these parcels are extremely attractive. Further, the debtors also introduced substantial evidence that a somewhat similar project in western Florida, called "Seaside," has been a great success.

On balance, the Court is unpersuaded by the debtors' argument that the success of Seaside is substantial evidence that the debtors' project will be a success. Ultimately, the Court concludes that the success of one enterprise is no evidence that another enterprise, even one offering a similar product, will succeed. In this case,

(A) the debtor does not have an equity in such property; and

(B) *such property is not necessary to an effective reorganization.* (Emphasis added.)

there are certainly similarities in the products offered by Seaside and the debtors, but there are also great differences. The main difference between Seaside and the debtors, however, has already been noted— while the market has accepted Seaside, it has not yet accepted the debtors' product.

The Court's ultimate conclusion is that although an enterprise without current income may be eligible for Chapter 11, such an enterprise faces substantial obstacles in establishing a reasonable prospect of reorganization, if only because it lacks a record and a history of operation. In appropriate circumstances, such a case might be a good faith filing, but the Court concludes there is insufficient evidence of that in this case.[3]

Accordingly, the Court finds that these cases were filed in bad faith, that there is, therefore, cause to lift the automatic stay, and the motion to lift stay is granted.

---

**3.** In this Court's view, it is of no particular weight or moment in judging the good faith issue that the case involves a single asset, that the assets are real estate, or that the case was filed on the eve of foreclosure. These factors are certainly important in providing the context of the issues to be addressed, but by themselves do not play any substantial role in determining whether the case was filed in good faith. In this Court's view, the number of assets is insignificant. That the case was filed on the eve of foreclosure only suggests that the debtor is in need of financial reorganization. Likewise, the mere fact that the case involves real estate as opposed to some other kind of asset is insignificant.