In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc. and Bar Harbor Airways, Inc., d/b/a Eastern Express, Debtors.

Paul Kevin ABEL and Richard
C. Bartel, Appellants,

v.

Martin R. SHUGRUE, Jr., Trustee for the Estates of Eastern Air Lines, Inc. and Ionosphere Clubs, Inc. and the Statutory Committee of Unsecured Creditors, Appellees.

No. 95 Civ. 0363 (JGK).

United States District Court,
S.D. New York.

July 27, 1995.

Paul K. Abel, Alexandria, VA, pro se.

Richard C. Bartel, Chevy Chase, MD, pro se.

Howard B. Comet, Laura M. Sillins, Weil, Gotshal & Manges, New York City, for appellee Eastern Air Lines, Inc., reorganized debtor.

## OPINION AND ORDER

KOELTL, District Judge:

This in appeal from an order of the Bankruptcy Court (Burton R. Lifland, Chief Bankruptcy Judge) confirming a Chapter 11 plan. The appeal raises various issues pertaining to the sale of assets both prior to the submission of a disclosure statement and subsequent to the confirmation of a plan as well as to the liquidation of the debtors' estates under Chapter 11 of the Bankruptcy Code.

### I.

The debtors, Eastern Air Lines, Inc. ("Eastern") and its affiliate, Ionosphere Clubs, Inc. ("Ionosphere"), both filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") on March 9, 1989. A trustee was appointed on April 19, 1990 to operate the debtors' businesses and manage their properties. In January, 1991, the debtors ceased all operations. Following the submission to the Bankruptcy Court of a Chapter 11 plan ("Plan") and joint disclosure statement ("Disclosure Statement") on September 22, 1994, the appellants, Paul Abel, a creditor of Eastern, and Richard Bartel, an equity holder of Eastern, filed objections to the approval of the Disclosure Statement, arguing that the Plan was fatally flawed and unconfirmable on its face and that, therefore, the Disclosure Statement should not be approved and disseminated to creditors for voting.[1]

---

1. In a Chapter 11 case, once a plan proponent devises a Chapter 11 plan which it believes meets the requirements of Section 1129 of the Bankruptcy Code, the plan must be filed and the proponent must solicit acceptances of the plan by creditors. Before doing so, the proponent must submit the proposed plan and a disclosure statement approved by order of the court, after notice and a hearing, as containing adequate information. See 11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information":

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of

A hearing was held by Chief Judge Lifland on October 25, 1994. The Bankruptcy Court overruled the appellants' objections, ruled that the Plan was not unconfirmable on its face (the "Ruling") and approved the Disclosure Statement, as amended, finding that it contained the required "adequate information" under Section 1125 of the Bankruptcy Code ("Approval Order"). The Disclosure Statement subsequently was disseminated to the creditors for voting on the Plan. In excess of eighty percent of the creditors in number and amount of claims voted in favor of accepting the Plan. (Appendix, Tab C at 30.).

The appellants filed a notice of appeal from the Approval Order and Ruling on November 3, 1994. They then filed an objection to the confirmation of the Plan, arguing that the Plan was fatally flawed and unconfirmable on its face. On December 22, 1994, following a hearing, the Bankruptcy Court entered an order approving the Plan as modified ("Confirmation Order"), again overruling the appellants' objections. The appellants then filed a notice of appeal from the Confirmation Order dated December 22, 1994, raising most of the issues that they had raised in the earlier appeal.

The Plan became effective on February 6, 1995 and was "substantially consummated" as that term is defined in Section 1101(2) of the Bankruptcy Code. Section 1101(2) defines "substantial consummation" as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the manage-

ment of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). On February 6, 1995, distributions aggregating $30,945,577 were made under the Plan, the estate of Ionosphere was substantively consolidated with that of Eastern, the Creditors' Committee was disbanded and the continued liquidation of Eastern became the responsibility of a liquidating agent, inasmuch as the trustee's obligations to the debtors' estates terminated. (Appendix, Tab E at 3–4; Appellee's Mem.Opp'n at 10.) Moreover, releases have been granted, an indenture has been cancelled and a new one has been executed, new secured certificates have been issued, subordinated debentures and secured equipment certificates have been cancelled, all shares of preferred and common stock have been cancelled and lawsuits have been dismissed. (Appendix, Tab A at 51–52; Tab B, Exh. A at A–14.) [2]

In an opinion dated March 13, 1995, this Court dismissed the appellants' appeal from the Approval Order and Ruling as an appeal from an interlocutory order without prejudice to the appellants' right to raise objections with respect to the approval of the Disclosure Statement in connection with their appeal from the Confirmation Order. *See In re Ionosphere Clubs, Inc.,* 179 B.R. 24 (S.D.N.Y.1995). It is the appeal from the Confirmation Order that is the subject of this appeal.[3]

## II.

The appellants have raised what they present as seven distinct issues on appeal. They

---

the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan. . . .

11 U.S.C. § 1125(a).

2. In support of their appeal, the appellants have not argued that the Plan has not been substantially consummated within the meaning of Section 1101(2).

3. While the appellants, at least at one point in their papers, seek the reversal of both the Approval Order and Ruling and the Confirmation Order, (Appellants' Brief on Appeal at 11), this

Court previously dismissed the appeal from the Approval Order and Ruling as interlocutory on the condition that any issues with respect to the adequacy of the Disclosure Statement could be raised in the present appeal. *See In re Ionosphere Clubs, Inc.,* 179 B.R. at 29 & n. 3. Therefore, while the appellants were able to raise any and all arguments with respect to the Disclosure Statement in this appeal, their potential relief properly is limited to reversal of the Confirmation Order. Even in the appellants' reply papers, they seek only a modification or reversal of the Confirmation Order and not a reversal of the Approval Order and Ruling. (*See* Appellants' Amended Reply Brief at 11.)

characterize these as: (1) whether the proposed Plan was confirmable as a threshold issue of law; (2) whether Chapter 11 can be used for the liquidation of a bankruptcy estate without an approved disclosure statement and/or confirmed plan of reorganization; (3) whether the liquidating actions undertaken by a debtor-in-possession or a trustee under Chapter 11 without a disclosure statement or a confirmed plan of reorganization are void or voidable; (4) whether a reorganization plan can be confirmed as a matter of law if it does not provide that prior liquidating actions are void or voidable by the reorganized debtor; (5) whether property untreated by the Plan or Confirmation Order becomes property of the original debtor and its equitable interests under 11 U.S.C. § 1141(b); (6) whether the scope of the proposed injunction in the Plan conflicts with 28 U.S.C. § 959(b) and Bankruptcy Rule 2010 and is, therefore, invalid; and (7) whether the Creditors' Committee of Eastern actually met to review and vote on the proposed Disclosure Statement and Plan.

For the reasons explained below, the appeal is dismissed in part as moot and, to the extent that this appeal is not moot, the Bankruptcy Court's order is affirmed.

### A.

■■■ The aspects of the appellants' appeal from the Confirmation Order that relate to the sale of assets of the debtors' estates have been rendered moot by virtue of the substantial consummation of the Plan. "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed[ ]" by virtue of Article III's "case or controversy" requirement. *Church of Scientology v. United States,* — U.S. —, —, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)); *accord In re Chateaugay Corp.,* 10 F.3d 944, 949 (2d Cir.1993) (*Chateaugay II* ). As the Court of Appeals has stated: "Within the bankruptcy context, '[a]n appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementa-

tion of that relief would be inequitable.' " *Chateaugay II,* 10 F.3d at 949–50 (quoting *In re Chateaugay Corp.,* 988 F.2d 322, 325 (2d Cir.1993) ("*Chateauqay I* ")); *see also In re 1515 Broadway Assocs., L.P.,* 153 B.R. 400, 405 (S.D.N.Y.1993) (Sweet, J.) ("In the bankruptcy context, these equitable principles retain an important role, and the case may be moot in situations where the court has jurisdiction under Article III but reversing on appeal would destroy the work of the bankruptcy court.").

■■■ However, substantial consummation of a plan does not necessarily make it impossible or inequitable for a reviewing court to grant relief. The Court of Appeals has explained:

In bankruptcy proceedings, the mootness doctrine involves equitable considerations as well as the constitutional requirement that there be a case or controversy.... Constitutional and equitable considerations dictate that substantial consummation [of a reorganization plan] will not moot an appeal if all of the following circumstances exist: (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order ... if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Chateaugay II,* 10 F.3d at 952–53 (citations and internal quotation marks omitted); *see also Allstate Ins. Co. v. Hughes,* 174 B.R. 884, 888 (S.D.N.Y.1994) (Sotomayor, J.) ("[I]t is appropriate to scrutinize appeals for mootness in two situations: when an unstayed order has resulted in a 'comprehensive change in circumstances,' and when a reorga-

nization is 'substantially consummated.'") (citations omitted).

The requisite *Chateaugay II* circumstances do not exist in the present case. It is clear that the Court cannot render any effective relief without unraveling the entire Plan and creating an unmanageable and uncontrollable situation for the Bankruptcy Court. At oral argument, the appellants explained that the relief they seek is for the estate and the fiduciary interests to be able to reexamine all of the sales that were made under 11 U.S.C. § 363 in order to ratify or void them.[4] As explained below, the appellants clearly understate both the radical nature of the relief they seek and the Court's inability to grant them such relief.

█ The appellants do not seek to modify a discrete aspect of the Plan that would leave the remainder of the Plan intact. Rather, the appellants challenge the Plan in its entirety—they seek to undo sales of assets made both prior to and following the confirmation of the Plan. Sales of assets began in 1989. Each sale that was made prior to the confirmation of the Plan was approved by the Bankruptcy Court under Section 363 as being in the best interests of the estate. Each of these sales could have been appealed and the appellants could have sought a stay with respect to each sale; however, no appeals were taken and no stay was sought. Since the confirmation of the Plan, tens of thousands of creditors have received millions of dollars in distributions under the Plan. These assets and distributions cannot be recouped. *See In re 1515 Broadway Assocs.,* 153 B.R. at 406 ("The determinative factor is whether the funds are still available to the court, either because they have not yet been disbursed or because the party to which they have been paid has been on notice, through a stay or otherwise, that the funds are being contested."). Here, the Plan has been substantially consummated, a factor strongly indicating that the instant appeal is moot. *See In re Best Prods. Co.,* 177 B.R. 791, 803 (S.D.N.Y.1995) (Schwartz, J.) ("Where a plan has been substantially consummated, there

fairly exists a strong presumption that appellants' challenges have been rendered moot due to their inability or unwillingness to seek a stay.") (citation and internal quotation marks omitted); *In re 1515 Broadway Assocs., L.P.,* 153 B.R. at 405 ("[T]he usual benchmark for determining when an appeal in bankruptcy is moot is whether the plan in question has been 'substantially consummated,' a technical term defined in Section 1101(2) of the Bankruptcy Code.").

█ Moreover, with respect to the fifth *Chateaugay II* requirement, the appellants failed properly to seek a stay of the Confirmation Order, resulting in a change in circumstances that now makes it impossible for the Court, consistent with principles of equity, to grant the appellants relief. When an appellant fails to seek a stay of a bankruptcy court's confirmation order, such inaction does not necessarily render an appeal moot. *See, e.g., In re Best Prods.,* 177 B.R. at 804 (no absolute requirement to seek a stay of a confirmation order, although the failure to do so may render an appeal moot based on constitutional and equitable considerations). However, where the inaction has " 'permitted such a comprehensive change in circumstances to occur,' [that] it is inequitable to hear the merits of [the] case[,]" the appeal should be dismissed. *In re Revere Copper & Brass, Inc.,* 78 B.R. 17, 23 (S.D.N.Y.1987) (Leisure, J.), (citations omitted).

Here, the appellants had requested a stay in the Bankruptcy Court in November, 1994 to proceed with the appeal from the Approval Order and Ruling. The Bankruptcy Court denied the request at that time because, among other things, it was premature. Following the entry of the Confirmation Order, no stay ever was sought or obtained from the Bankruptcy Court. While at oral argument on the prior appeal, the appellants claimed that they had filed a motion in this Court to stay the implementation of the Confirmation Order, neither the Court nor the appellees had been aware of the motion because it had not been filed properly and it had not been served. At the time of the oral argument,

---

**4.** Section 363 provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

the Plan already was effective and the distributions had been made. The appellants, therefore, withdrew their motion for an emergency stay motion as moot. *In re Ionosphere,* 179 B.R. at 29. There is no explanation by the appellants for why, to the extent they are challenging the authorizations for asset sales, those individual sales were not challenged, appeals were not taken and stays were not sought at those times. Moreover, even if the appellants' efforts to obtain a stay did constitute the requisite diligence under *Chateaugay II,* as discussed above, the circumstances of this case make it impossible for the Court to provide effective and equitable relief to the appellants.

Because the Plan has been substantially consummated and because the Court is unable, consistent with principles of equity, to render effective relief to the appellants, the appeal, at least as it relates to undoing transactions approved under Section 363, is dismissed as moot.

### B.

To the extent that this appeal is not moot, the appellants have raised no meritorious basis upon which to reverse or modify the Confirmation Order. In a careful and detailed order, the Bankruptcy Court found that the Plan satisfied the requirements of Section 1129.[5] The appellants attribute error to this determination based on their arguments that: (1) the Plan approved sales of assets that occurred prior to the filing of the Disclosure Statement and proposal of the Plan; (2) the Plan provides for a liquidation, rather than a reorganization; (3) the Plan extinguishes all common stock interests in *Eastern;* and (4) the Plan contains an injunction preventing the commencement of actions against fiduciaries of Eastern.

On this appeal, the Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed under a clearly erroneous standard. *See In re Ionosphere Clubs,* 922 F.2d 984, 988–89 (2d Cir. 1990), *cert. denied sub nom. Air Line Pilots Ass'n Int'l, AFL–CIO v. Shugrue,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *Truck Drivers Local 807 v. Carey Transp.,*

*Inc.,* 816 F.2d 82, 88 (2d Cir.1987); *see also* Fed.R.Bankr.P. 8013.

With respect to the sales of assets prior to the proposal of the Plan, such sales are authorized under Section 363 under appropriate circumstances. In *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir.1983), the Court of Appeals addressed the issue of the sale of an important asset of the bankrupt's estate out of the ordinary course of business and prior to acceptance and outside of any plan of reorganization. *Id.* at 1066. The court explained that such sales are not limited to emergency situations. *Id.* at 1069. Rather, "a judge determining a § 363(b) application [must] expressly find from the evidence presented ... at the hearing a good business reason to grant such an application." *Id.* at 1071. Accordingly, courts consistently have acknowledged that assets of an estate can be sold prior to the confirmation, or even filing, of a plan. *See, e.g., In re Chateaugay Corp.,* 973 F.2d 141, 145 (2d Cir.1992) (affirming the approval of a pre-confirmation sale under Section 363(b) that was analyzed by the bankruptcy court and the district court under the *Lionel* standard); *In re Equity Management Sys.,* 149 B.R. 120, 124 (Bankr. S.D.Iowa 1993) ("A sale of substantially all of the assets of the Debtors without a disclosure statement and plan is not prohibited by the Code, even when the sale is not in the ordinary course of business.") (citation omitted); *In re Naron & Wagner, Chartered,* 88 B.R. 85, 87–88 (Bankr.D.Md.1988) (applying the *Lionel* standard and authorizing a sale prior to the filing of a reorganization plan).

This appeal is not an appeal from an order authorizing the sale of particular assets. As the appellee noted at oral argument, the appellants never objected to or appealed from the authorization by the Bankruptcy Court of any individual sale. And, the appellants do not argue that there was no basis, under the applicable standard, for the Bankruptcy Court to approve such sales. Rather, the appellants appear to argue that the sales, in and of themselves, were invalid because they were made prior to the filing and confirmation of a plan. However, as discussed

---

**5.** Section 1129 sets forth the prerequisites to confirmation of a plan. *See* 11 U.S.C. § 1129.

above, that is not a sufficient basis for undoing all of those sales at this time.

■ With respect to the nature of the Plan and its provision for a liquidation instead of a reorganization of the debtors, the appellants' arguments that a liquidation is not permitted under Chapter 11 are mistaken. Section 1123(b)(4) provides for the sale of all of the property of the estate, as well as the distribution of the proceeds of such sales to creditors, by means of a liquidating plan. *See* 11 U.S.C. § 1123(b)(4); *see also In re Fairmont Communications,* 92 B 44861, 1993 WL 428710, *5 (Bankr.S.D.N.Y. Oct. 12, 1993) (plan provided for orderly liquidation under Chapter 11); *In re Thomson McKinnon Securities, Inc.,* 126 B.R. 833, 836 (Bankr.S.D.N.Y.1991) (Chapter 11 liquidation case).

As the court explained in *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 985–86 (Bankr.N.D.N.Y.1988): "While the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited. 'Reorganization encompasses rehabilitation and may include liquidation.'" *Id.* at 985–86 (citations omitted); *see also In re River Village Assocs.,* 181 B.R. 795, 805 (E.D.Pa.1995) ("[T]he Bankruptcy Court correctly concluded that, as a matter of law, the Bankruptcy Code permits liquidation plans in Chapter 11 proceedings and such a plan does not violate the requirements of § 1129(a).") (citing, among other things, 11 U.S.C. § 1123(b)(4)); *In re Ocean Beach Properties,* 148 B.R. 494, 497 (Bank.E.D.Mich.1992) ("[T]he purpose of Chapter 11 is to reorganize a business. It is

certainly true that reorganization might in appropriate cases consist of either rehabilitation of the debtor's business or the orderly liquidation of the debtor's assets. The law as it has developed under Chapter 11 permits either course of action or a combination of both courses of action."); *In re Coffee Cupboard, Inc.,* 119 B.R. 14, 19 (E.D.N.Y.1990) ("[W]hile the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited.") (citation omitted); *In re Sapolin Paints, Inc.,* 11 B.R. 930, 935 (Bankr. E.D.N.Y.1981) ("Although Chapter 11 is captioned 'Reorganization,' and although the aim of the reorganization provisions of the Code is to facilitate a rehabilitation, the Code contemplates that a debtor corporation 'may be liquidated in Chapter 11.'") (citation omitted).[6]

■ With respect to the appellants' claim that the Plan improperly extinguished equity ownership interests in violation of state law, there is no merit to this argument. First, under Section 1129, a plan may provide that stockholders or other holders of equity interests will receive no distributions under a plan or that their interests will be cancelled. *See* 11 U.S.C. § 1129(b)(2)(B). Second, Section 1123 provides that a plan may impair the interests of any class of claims. *See* 11 U.S.C. § 1123(a)(5) & (b)(1), (5); *see also* 5 Collier on Bankruptcy § 1123.02[1][b] (15th ed. 1994) ("Section 1123(b)(1) embodies the policy of chapter 11 that the terms of the plan of reorganization should reflect the needs of the debtor."). And third, Section 1141 provides that, except as provided for in the plan, the confirmation of a plan "termi-

---

**6.** The authority upon which the appellants rely is not to the contrary. The appellants rely principally on *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983). *Braniff,* however, is not controlling. In *Braniff,* the Court of Appeals for the Fifth Circuit held that the district court improperly had approved a transaction under Section 363(b). *Braniff,* 700 F.2d at 940. The court found that the transaction at issue fell outside the scope of Section 363(b). *Id.* at 939. The court explained that this was true because a provision of the transaction "had the practical effect of dictating some of the terms of any future reorganization plan[,]" in addition to changing the composition of the debtor's assets. *Id.* at 939–40. The court noted: "The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation

of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets." *Id.* at 940. And, in reversing the order approving the transaction, the court stated: "In any future attempts to specify the terms whereby a reorganization plan is to be adopted, the parties and the district court must scale the hurdles erected in Chapter 11." *Id.* In the present case, the appellants have not challenged any aspect of the transactions as somehow dictating the terms of the Plan or otherwise falling outside the parameters of Section 363, making *Braniff* inapposite. *See, e.g., In re Brookfield Clothes, Inc.,* 31 B.R. 978, 983 n. 6 (S.D.N.Y. 1983) (Sand, J.) (noting that *Braniff* did not hold that Section 363 is unavailable for the sale of substantially all of the debtor's assets).

nates all rights and interests of equity security holders and general partners provided for by the plan." 11 U.S.C. § 1141(d)(1)(B); *see also In re Heck's, Inc.*, 112 B.R. 775, 798–99 (Bankr.S.D.W.Va.1990) (a plan can alter creditor and shareholder state law rights and can dilute or divest shareholders' interests entirely under appropriate circumstances), *aff'd in part, reversed in part on other grounds,* 151 B.R. 739 (S.D.W.Va.1992).[7]

 There also is no merit to the appellants' claim that the injunction contained in Article XII(A)(3) of the Plan is invalid because it enjoins creditors from commencing lawsuits against, among other persons and entities, the trustee and officers and directors of Eastern in connection with their actions taken prior to the effective date of the Plan. Courts consistently have recognized that bankruptcy courts may issue injunctions enjoining creditors from suing third parties including officers and directors of the debtor in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir.1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan.... [T]he injunction limits the number of lawsuits that may be brought against Drexel's former directors and officers. This enables the directors and officers to settle these suits without fear that future suits will be filed.") (citations omitted), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993); *In re A.H. Robins Co.,* 880 F.2d 694, 700–02 (4th Cir.) (upholding an injunction under 11 U.S.C. § 105(a) against suits by creditors against certain third parties including the debtor's directors and lawyers), *cert. denied,* 493 U.S. 959, 110 S.Ct. 376, 377, 107 L.Ed.2d 362 (1989); *In re*

*Keene Corp.,* 164 B.R. 844, 849 (Bank. S.D.N.Y.1994) (bankruptcy court has the power to issue an appropriate injunction to ensure orderly reorganization); *In re Lazarus Burman Assocs., L.B.,* 161 B.R. 891, 897 (Bankr.E.D.N.Y.1993) ("When an action by a creditor of a debtor against a non-debtor third party threatens a debtor's reorganization, the creditor's action may be enjoined pursuant to section 105(a). The Bankruptcy Court has the power to issue an injunction to preserve the orderly conduct and integrity of reorganization proceedings.") (citations omitted); *In re Swann Gasoline Co.,* 62 B.R. 13, 13 (Bankr.E.D.Pa.1986) (a bankruptcy court has jurisdiction to enjoin a creditor from suing a non-debtor where the failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the non-debtor).[8] In this case, the injunctions were integral to a final resolution of claims and were necessary to give finality to the Plan. (*See* Appendix, Tab B at 12, ¶ 30.)

The appellants' argument that the Plan leaves certain assets untreated is belied by Article III(E)(7) of the Plan which provides that all assets not otherwise distributed on the effective date will be distributed to general unsecured creditors over time until all assets have been sold or otherwise disposed of. (Appendix, Tab B, Exhibit A at A–13.) The appellants have failed to demonstrate how it is that this leaves any assets untreated such that they revert to the debtors' estates and to Eastern's former shareholders.

Finally, the appellants' unsubstantiated claim that they have reason to believe that the Creditors' Committee never met or approved the Disclosure Statement or the Plan is belied by the Creditors' Committee's appearance before the Bankruptcy Court, through counsel, as a co-proponent of the

---

7. Additionally, while the appellants make conclusory allegations of violations of state law, Delaware law, which applies to Eastern, a Delaware corporation, permits the cancellation of common stock pursuant to a Chapter 11 plan without further action by the board of directors or stockholders. *See* Del.Gen.Corp.Law § 303.

8. Moreover, with respect to the appellants' argument that the injunction is invalid because it shields the fiduciaries from criminal charges, the

Plan specifically was amended so that criminal actions are not precluded. (Appendix, Tab B, Exh. B at 17.) Similarly, the Plan was amended to alleviate any conflict with the Anti–Injunction Act; Article XII(A)(3) of the Plan was amended to permit direct actions against responsible officers arising under the Internal Revenue Code on account of withholding and other similar taxes. (*Id.*)

Plan. (*See* Appendix, Tab A at 1; Tab C at 4.)

For all of the foregoing reasons and to the extent that this appeal is not dismissed as moot, the order of the Bankruptcy Court is affirmed.

**SO ORDERED.**