**Richard BARTEL, Appellant,**

v.

**BAR HARBOR AIRWAYS, INC. d/b/a Eastern Express, Appellees.**

No. 95 Civ. 3983 (JGK).

United States District Court, S.D. New York.

May 30, 1996.

Richard C. Bartel, Chevy Chase, MD, pro se.

Daniel King, Paul Ferdinands, King & Spalding, New York City, for Appellees.

## OPINION

KOELTL, District Judge:

The subjects of this appeal are two orders entered by the United States Bankruptcy Court (Burton R. Lifland, Chief Bankruptcy Judge). The first order disallowed the appellant creditor's claim on the grounds that the appellant had already settled his claim with the debtor Bar Harbor Airways, Inc. ("Bar Harbor"). The second order approved the reorganization plan of the appellee Bar Harbor over the appellant's objections. For the reasons stated below, these two orders of the Bankruptcy Court are affirmed.

## I.

Bar Harbor was incorporated as a commuter airline in 1943. In August 1990, Eastern Airlines became the owner of substantially all of Bar Harbor's outstanding capital stock. On January 19, 1991, Bar Harbor ceased its flight operations. The following day Bar Harbor filed a voluntary chapter 11 petition with the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). After Bar Harbor petitioned for bankruptcy, Eastern acquired all of the outstanding shares of Bar Harbor's capital stock that were not previously owned by Eastern. (3/29/95 Tr. at 34–35.) In addition, Bar Harbor began the liquidation of its assets. All of the asset sales were made pursuant to 11 U.S.C. § 363. The aggregate consideration received by Bar Harbor in connection with the sales of its assets during the bankruptcy case was approximately $2.4 million.

On December 29, 1994, Bar Harbor submitted to the Bankruptcy Court a Chapter 11 reorganization plan ("Plan") and joint disclosure statement. There are two parts to the Plan: (1) the liquidation of Bar Harbor's assets and the distribution of the proceeds to Bar Harbor's creditors and (2) the settlement of all claims asserted by Eastern against Bar Harbor and vice versa. The appellant, who is a former employee of Bar Harbor as well as one of its creditors in the amount of $923.62, filed an objection to the approval of the Plan.

In connection with the bankruptcy proceedings, Bar Harbor also filed a motion with the Bankruptcy Court on February 22, 1994 for approval of an offer of compromise and settlement (the "Employee Settlement") of all administrative, priority, and general unsecured claims held by Bar Harbor's former employees. Each employee, including the appellant, was served with a copy of the Employee settlement motion and was given

an individualized "creditor detail" showing the amount of administrative, priority, and general unsecured claims due and owing to such employees. The Employee settlement motion gave each employee an opportunity to opt out of the Employee Settlement and informed the employees that if they did not follow the opt out procedures of the settlement motion, they would be included in the Employee Settlement and be paid accordingly. No employee elected to exercise the right to opt out of the Employee Settlement. The appellant Bartel received and cashed his settlement check in the amount of $1,468.98. On March 29, 1994, the Bankruptcy Court entered an order approving the Employee Settlement. Under the terms of the Employee Settlement, the settlement payments made to the employees pursuant to the order were deemed full and final satisfaction of all administrative, priority, and secured claims of the employees, asserted or unasserted.

After cashing his settlement check, Bartel filed a claim for $923.62 (the "Claim"). Bar Harbor then filed the Second Omnibus Objection of Bar Harbor Airways, Inc. to the Allowance of Certain Claims (the "Claim Objection") requesting that the Bankruptcy Court disallow and expunge the Claim on the grounds that Bartel had released and waived all of his claims against Bar Harbor by participating in the Employee Settlement. In response, Bartel argued that he had opted out of the Employee Settlement by cashing his settlement check with a restrictive endorsement.

At a hearing held on March 29, 1995, the Bankruptcy Court addressed Bartel's objections to the confirmation of Bar Harbor's reorganization plan as well as Bar Harbor's request to expunge Bartel's creditor claim. At the hearing, the Bankruptcy Court first entered the Order Disallowing and Expunging the Claims Asserted by Richard C. Bartel ("Claim Order") on the grounds that Bartel had released his claims against Bar Harbor by participating in the Employee Settlement. The Bankruptcy Court then overruled Bartel's objections to confirmation and entered the Order Approving Plan of Reorganization of Bar Harbor Airways, Inc. ("Confirmation Order"). At the end of the

hearing, Bartel made an oral motion for stay of the Confirmation Order pending appeal. The Bankruptcy Court denied the stay on the merits after Bartel refused to agree to post a substantial bond immediately.

The Plan became effective on April 17, 1995. ("Effective Date"). As the Plan provided, payment of distributions to creditors were made within 15 days of the Effective Date. Accordingly, the plan is now "substantially consummated" as that term is defined in Section 1101(2) of the Bankruptcy Code. Section 1101(2) defines "substantial consummation" as

(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

## II.

The appellant raises the following issues on this appeal: (1) whether the proposed Plan was confirmable as a matter of law; (2) whether Chapter 11 can be used for the liquidation of a bankruptcy estate without an approved disclosure statement and/or confirmed plan of reorganization; (3) whether the liquidating actions undertaken by a debtor-in-possession or a trustee under Chapter 11 without a disclosure statement or a confirmed plan of reorganization are void or voidable; (4) whether a reorganization plan can be confirmed as a matter of law if it does not provide that prior liquidating actions are void or voidable by the reorganized debtor; (5) whether property untreated by the Plan or Confirmation Order becomes property of the original debtor under · 11 U.S.C. § 1141(b); (6) whether the scope of the proposed injunction in the Plan conflicts with 28 U.S.C. § 959(b) and Bankruptcy Rule 2010 and is invalid; and (7) whether the Bankruptcy Court erred when it disallowed and expunged the appellant's claim on the grounds that Bartel had released and waived all his claims against Bar Harbor by participating in the Employee Settlement. This

Court has already addressed many of these issues in the appeal by the same appellant in the bankruptcy of Eastern Air Lines, Inc. and its affiliate, Ionosphere Clubs, Inc. *In re Ionosphere Clubs, Inc.*, 184 B.R. 648 (S.D.N.Y.1995).

■ On this appeal, the Bankruptcy Court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *See In re Ionosphere Clubs*, 922 F.2d 984, 988–89 (2d Cir.1990), *cert. denied sub nom. Air Line Pilots Ass'n Int'l, AFL-CIO v. Shugrue*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *Truck Drivers Local 807 v. Carey Transp., Inc.*, 816 F.2d 82, 88 (2d Cir.1987); *In re Ionosphere Clubs, Inc.*, 184 B.R. 648 (S.D.N.Y.1995); *see also* Fed. R.Bankr.P. 8013.

### A.

■ The appellant first asks the Court to reverse the Claim Order of the Bankruptcy Court that declared that Bartel had released all of his claims against Bar Harbor by participating in the Employee settlement.

The Employee Settlement was consummated pursuant to Fed.R.Bankr.P. 9019(b), which provides that

[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the [debtor] to compromise or settle controversies within such class or classes without further hearing or notice.

The appellant does not dispute that he was served with the copies of the Employee Settlement motion and the "creditor detail" specifying his claims against Bar Harbor; that the Employee Settlement motion described the procedures he should follow in the event he wished to opt out of the settlement; that he did not file an objection to the Employee Settlement and did not follow the opt out procedures specified in the Employee Settlement motion; and that he received and cashed his settlement check. Instead, Bartel argues that he opted out of the Employee Settlement by including a restrictive endorsement on his check.

The Bankruptcy Court held that the appellant's restrictive endorsement was "self-serv-ing" and that he had failed to present "any credible evidence" indicating that the Claim was due and owing. There was no factual error in the Bankruptcy Court's findings. Moreover, the Bankruptcy Court was correct in holding that Bartel had released and waived all his claims against Bar Harbor by failing to follow the opt-out procedures contained in the Employee Settlement motion and approved by the Court and by receiving and cashing the Settlement Check. The Bankruptcy Court plainly had the power to authorize the debtor to settle claims, and the evidence establishes that Bartel settled his claim and cashed the settlement check. Accordingly, the Bankruptcy Court's Order Disallowing and Expunging the Claims Asserted by Richard C. Bartel is affirmed.

### B.

The appellant also appeals the Confirmation Order. This aspect of the appellant's appeal must be dismissed for three independent reasons. First, the appellant lacks standing to prosecute such an appeal. Second, such an appeal would be moot in any event. Third, even if Bartel has standing and the appeal is not moot, Bartel's objections to the Plan are without merit.

### 1.

■ There is no explicit limitation on appellate standing contained in the Bankruptcy Code. The Court of Appeals for the Second Circuit has held, however, that in order to have standing to appeal a bankruptcy court order, an appellant must demonstrate that he is a "person aggrieved." *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 513 (2d Cir. 1985), *cert. denied* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). To be a "person aggrieved," the appellant must be "directly and adversely affected pecuniarily by the challenged order." *Id.*

Because this Court has affirmed the Bankruptcy Court's disallowance of the appellant's claim, the appellant cannot show that he is a "person aggrieved." The entry of the Confirmation Order did not have any pecuniary effect on the appellant because his claims against Bar Harbor have been satisfied by his payment pursuant to the Employee Set-

tlement, and he was not entitled to receive any distributions under the Plan.

### 2.

■ In any event, even if the appellant had standing to challenge the Confirmation Order, the appeal is moot. The determination of mootness in the bankruptcy context "involves equitable considerations as well as the requirement of Article III of the Constitution that there be a live case or controversy." *In re Best Products Co., Inc.*, 68 F.3d 26, 29–30 (2d Cir.1995) (citing *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir.1993) (*Chateaugay II* )). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed[ ]' " by virtue of Article III's "case or controversy" requirement. *Church of Scientology v. United States*, 506 U.S. 9, 11–12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)); *accord In re Best Products*, 68 F.3d at 30; *Chateaugay II*, 10 F.3d at 949. As the Court of Appeals has stated, in the bankruptcy context "[a]n appeal is also moot when 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.' " *In re Best Products*, 68 F.3d at 30 (quoting *In re Chateaugay Corp.*, 973 F.2d 141, 145 (2d Cir.1992) ("*Chateaugay I* ")); *see also In re 1515 Broadway Assocs., L.P.*, 153 B.R. 400, 405 (S.D.N.Y.1993) (Sweet, J.) ("In the bankruptcy context, these equitable principles retain an important role, and the case may be moot in situations where the court has jurisdiction under Article III but reversing on appeal would destroy the work of the bankruptcy court.").

The appellee argues that granting relief requested on the merits in this case would be both impossible and inequitable. The appellant's primary objection to the confirmation of the Plan is that chapter 11 of the Bankruptcy Code cannot be used for the liquidation of a debtor's bankruptcy estate without an approved disclosure statement or confirmed plan of reorganization. Bartel argues that any asset liquidation that occurred before the filing of the disclosure Statement and the confirmation of a plan of reorganization is void or voidable, and thus seeks a review of all asset sales that were made pursuant to 11 U.S.C. § 363 in order to void or ratify them. Because it is undisputed that the Plan is substantially consummated under 11 U.S.C. § 1101(2), any effective relief would require the reversal of asset distributions already made under the Plan.

■ The substantial consummation of a plan does not necessarily make it impossible or inequitable for a reviewing court to grant relief, however. *Chateaugay II*, 10 F.3d at 952. Constitutional and equitable considerations will not moot an appeal if all of the following five requirements are met:

> (a) the court can still order some effective relief . . . (b) such relief will not affect 'the reemergence of the debtor as a revitalized corporate entity' . . . (c) such relief will not unravel intricate transactions so as to 'knock the props out from under the authorization for every transaction that has taken place' and 'create an unmanageable, uncontrollable situation for the Bankruptcy Court' . . . (d) the 'parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings' . . . and (e) the appellant 'pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.' "

*Id.* at 952–53 (internal citations omitted).

The requisite *Chateaugay II* circumstances do not exist in the present case. As explained above, the Court would be unable to order effective relief even if appellant's arguments are found to have merit. The asset sales are completed and the proceeds already distributed. In addition, this relief would "unravel intricate transactions" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court."

■ Furthermore, Bartel failed to pursue with diligence all available remedies to obtain a stay of either the orders authorizing the individual asset sales or of the Confirmation Order, resulting in a change in circumstances that now makes it inequitable for the Court to grant the appellant relief. Asset sales

began in 1991 pursuant to 11 U.S.C. § 363 [1] with the approval of the Bankruptcy Court as in the best interests of the estate. Bartel could have sought a stay with respect to each sale; however, no appeals were taken and no stay was sought. In addition, Bartel failed to take all possible measures to obtain a stay of the Confirmation Order. Although Bartel made an oral motion for a stay of the Confirmation Order pending appeal, Bartel would not agree at the time to post the necessary substantial bond, and the stay was denied on the merits. There is no indication of any further effort to obtain a stay. This failure to obtain a stay is an equitable factor that weighs strongly in favor of a finding of mootness. *See In re Best Prods. Co.*, 177 B.R. 791, 803 (S.D.N.Y.1995) (Schwartz, J.) ("Where a plan has been substantially consummated, there fairly exists a strong presumption that appellants' challenges have been rendered moot due to their inability or unwillingness to seek a stay.") (citations and internal quotation marks omitted).

Although the failure to obtain a stay of a bankruptcy court confirmation order does not automatically render an appeal moot, an appeal is presumed moot when the inaction has " 'permitted such a comprehensive change in circumstances to occur,' [that] it is inequitable to hear the merits of [the] case." *In re Revere Copper & Brass, Inc.*, 78 B.R. 17, 23 (S.D.N.Y.1987) (Leisure, J.) (citations omitted); *see In re Best Prods.*, 177 B.R. 791, 804 (S.D.N.Y.1995) (no absolute requirement to seek a stay of a confirmation order, although the failure to do so may render an appeal moot based on constitutional and equitable considerations). In this case, Bar Harbor's assets have been liquidated, millions of dollars in distributions have already been made, and these assets and distributions cannot be recouped. In sum, it would inequitable to grant relief to the appellant at this juncture because all of Bar Harbor's assets have been distributed to creditors who had no notice through a stay or appeal that these distributions were contested. *See In re 1515 Broadway Assocs.*, 153 B.R. at 406 ("The

determinative factor is whether the funds are still available to the court, either because they have not yet been disbursed or because the party to which they have been paid has been on notice, through a stay or otherwise, that the funds are being contested.").

3.

To the extent that the appellant has standing and that this appeal is not moot, the appellant has failed to present any meritorious basis upon which to reverse or modify the Confirmation Order.

■ Bartel's principle argument is that a debtor cannot sell its assets in chapter 11 without a disclosure statement and plan of reorganization. This argument is completely devoid of merit. Section 363 of the Bankruptcy Code specifically authorizes such sales of assets during a chapter 11 case. *See* 11 U.S.C. § 363: The Court of Appeals for the Second Circuit has held that section 363 sales are proper as long as "a judge determining a § 363(b) application expressly find[s] from the evidence presented ... at the hearing a good business reason to grant such an application." *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir.1983). Indeed, the Court of Appeals has confirmed the sale of assets under section 363 under circumstances similar to those presented in this case. *See Chateaugay I*, 973 F.2d at 145 (affirming the approval of a pre-confirmation sale under section 363(b)); *see also In re Ionosphere Clubs, Inc.*, 184 B.R. at 653.

■ The appellant also argues that liquidation is not permitted in a chapter 11 bankruptcy. This argument is without merit as well. Section 1123(b)(4) provides for the sale of all of the property of the estate and the distribution of the proceeds to creditors by means of a liquidation plan. *See* 11 U.S.C. § 1123(b)(4); *see also In re Ionosphere Clubs, Inc.*, 184 B.R. at 654 (listing cases).[2]

The appellant also argues that the Confirmation Order is invalid because it proposes to shield actors in the Bar Harbor case particularly from criminal charges and is inconsistent with 28 U.S.C. § 959(b) and Fed.

---

**1.** Section 363 provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

**2.** The appellant's reliance on *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir.1983), is inapposite. *See In re Ionosphere Clubs, Inc.*, 184 B.R. at 654 n. 6.

R.Bankr.P. 9010. This argument is groundless because the Confirmation Order specifically provides that criminal actions are excluded from the scope of the injunction. In addition, courts have consistently recognized that bankruptcy courts may issue injunctions enjoining creditors from suing third parties including officers and directors of the debtor in order to resolve all claims in connection with the estate and to give finality to a reorganization plan. *See In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 292 (2d Cir.1992); *In re Ionosphere Clubs, Inc.,* 184 B.R. at 655.

The appellant's final argument is that there is substantial property untreated by the Plan or Confirmation Order that should be declared to have reverted to the Debtor. This argument fails as well because the only evidence in the record is that Bar Harbor has no assets that were not treated by the Plan. (Exh. 15 (3/29/95 Tr. at 34).)

### CONCLUSION

For the reasons stated above, to the extent that this appeal is not dismissed as moot, the orders of the Bankruptcy Court appealed from are **AFFIRMED.**

**SO ORDERED.**